## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re   GERALDINE BERNADIN, | : | **Chapter 13** |
| | : | |
| **Debtor** | : | |
| | : | **Bky. No. 18-12717 ELF** |
| | : | |
| **GERALDINE BERNADIN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| | : | **Adv. No. 18-281** |
| | : | |
| **U.S. BANK NATIONAL ASSOCIATION, as Trustee,** | : | |
| **Successor in Interest to Wachovia Bank,** | : | |
| **National Association as Trustee for Merrill Lynch** | : | |
| **Mortgage Investors Trust, Mortgage Loan** | : | |
| **Asset-Backed Certificates, Series 2005-A6,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **OCWEN LOAN SERVICING, LLC,** | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

In this adversary proceeding, Plaintiff Geraldine Bernadin ("the Debtor"), a chapter 13 debtor, seeks the entire or partial disallowance of a proof of claim ("the POC" or "the Claim") filed by Defendant U.S. Bank National Association ("U.S. Bank").  The Debtor also seeks affirmative relief under the Fair Debt Collections Practices Act ("the FDCPA"), 15 U.S.C. §§1692 et seq.

U.S. Bank holds the mortgage on the Debtor's residential real property.  Ocwen Loan Servicing, LLC ("Ocwen") services the mortgage and also is a named defendant.[1]  The law firm Phelan Hallinan Diamond & Jones, LLP ("Phelan Hallinan") signed and filed the POC on behalf of U.S. Bank.  Phelan Hallinan was initially named as a co-defendant, but the Debtor withdrew her claims against the law firm.

U.S. Bank and Ocwen filed a motion to dismiss the Complaint ("the Motion").

For the reasons that follow, I will grant the Motion in large part.  The claims in the Complaint against U.S. Bank will be dismissed with prejudice except for Count II.  Count II will be dismissed in part, but survives the Motion insofar as the Debtor seeks partial disallowance of the charges included in the POC for escrow advances made by U.S. Bank after it obtained a judgment in foreclosure against the Debtor's property.

As for Ocwen, I conclude that the Debtor's FDCPA claim fails to state a claim. However, as explained in Part V, below, I lack authority to enter a final judgment in favor of Ocwen and against the Debtor. Therefore, my order will include a recommendation that the district court dismiss Count IV of the Complaint and provide for transmission of the matter to the district court for further action.

---

[1]    Initially, the Debtor also asserted  causes of action against U.S. Bank and Ocwen pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 et seq. and Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. §§2270.1 et. seq., but has withdrawn those claims.

## II.  FACTUAL BACKGROUND

The following is a summary of the relevant facts alleged in the Complaint.

The Debtor has a 49% interest as a tenant in common in the residential property located at 1205 Stirling Street in Philadelphia, Pennsylvania ("the Property").  The other tenants in common are Daunoun Dubuisson, a\k\a Daudouin Dubuisson ("Daudouin"), who has a 49% interest, and Nativita Dubuisson Gregory ("Nativita"), who has 2% interest.

On June 16, 2015, U.S. Bank obtained a foreclosure judgment by default against the Debtor and her co-owners in the amount of $161,958.16 ("the Foreclosure Judgment").

After the Debtor filed this bankruptcy case in 2018, U.S. Bank filed the POC.  In the POC, U.S. Bank asserts a secured claim against the Debtor in the amount of $192,536.07.

The POC states that the basis of U.S. Bank's secured position is a mortgage ("the Mortgage") dated May 31, 2005 in favor of Mortgage Electronic Registration System "as nominee for Lender and Lender's successors and assigns."  The "Lender" is defined in the Mortgage as "GreenPoint Mortgage Funding, Inc." ("GreenPoint").

The underlying note, a promissory note in the original principal amount of $144,400.00 ("the Note"), dated May 31, 2005, is also attached to the POC.  Significantly, the Note provides that the loan is payable over thirty (30) years with a maturity date of June 1, 2035.

The "Borrower" and signatories on the mortgage are Daudouin, Nativita, and the Debtor. The Note was signed only by Daudouin and Nativita, and not by the Debtor.

Subsequently, GreenPoint endorsed the Note in favor of Wachovia Bank National Association as Trustee ("Wachovia").  The Note contains no further endorsements.  However, in August 2011, GreenPoint executed an assignment of the Mortgage in favor of "U.S. Bank, National Association, as Successor Trustee to Wachovia Bank, N.A., as Trustee."

3

The POC and the attached payment history seek payment for advances that U.S. Bank made for real estate taxes and insurance premiums arising after the entry of the Foreclosure Judgment.  The POC does not refer to the Foreclosure Judgment.

The Mortgage and Note do not specify that the borrower's duties to pay taxes and maintain insurance and to reimburse the mortgagee for advances made by the mortgagee survive the merger of the Mortgage into the Foreclosure Judgment.

## III.  PROCEDURAL HISTORY

The Debtor commenced a chapter 13 bankruptcy case on April 23, 2018.  On June 26, 2018, U.S. Bank filed its POC, asserting a claim secured by the Debtor's residence in the amount of $192,536.07.

The Debtor initiated this adversary proceeding by filing the Complaint on December 4, 2018, naming U.S. Bank, Ocwen, and Phelan Hallinan as defendants.

Two (2) motions to dismiss were filed on January 28, 2019, one (1) by Phelan Hallinan and the other by U.S. Bank with Ocwen. (See Adv. Doc. #'s 11, 12).  The Debtor timely responded to both motions. (See Adv. Doc. #'s 20, 22).

In response to Phelan Hallinan's motion, the Debtor voluntarily withdrew Count IV of the Complaint as to Phelan Hallinan, effectively dismissing the firm from this litigation. (See Adv. Doc. #'s 22, 23).  In her response to the pending U.S. Bank/Ocwen Motion, the Debtor also withdrew several of her causes of action. See n.1, supra.

The following claims remain for purposes of the Motion.

In Count I, the Debtor seeks disallowance of the Claim in its entirety.  The Debtor asserts that U.S. Bank lacks the authority to enforce the Claim because it is neither the holder nor the possessor of the Note on which the POC is based.

In Count II, asserted as an alternative to Count I, the Debtor contends that even if U.S. Bank has standing to assert its Claim, the Claim must be limited to the amount of the Foreclosure Judgment, $161.958.16, plus accrued interest,[2] minus payments made since the entry of the judgment. The crux of the cause of action is the Debtor's contention that the merger doctrine prevents U.S. Bank from collecting advances made after the entry of the Foreclosure Judgment.

In Count III, the Debtor asserts two (2) distinct causes of action.  The first is a request for a determination that the allowed secured claim be limited to the value of U.S. Bank's interest in the bankruptcy estate's interest in the real property serving as collateral for the claim.  See 11 U.S.C. §506(a).  The second is a request under the FDCPA for damages and attorney's fees to be used to reduce U.S. Bank's allowed secured claim.[3]

In Count IV, the Debtor asserts a claim against Ocwen for violation of the FDCPA.


## IV.    LEGAL STANDARD – MOTION TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the factual allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and determines whether the plaintiff is entitled to offer evidence to support the claims, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007). A defendant is entitled to dismissal of a

---

[2]    The Debtor acknowledges that $14,448.11 in interest accrued after the entry of the Foreclosure Judgment and prior to the commencement of the Debtor's bankruptcy case.   (Compl. ¶30).


[3]    The FDCPA claim and the request for a determination that U.S. Bank's lien is void pursuant to 11 U.S.C. §506(a), (d) are so unrelated that it is hard to understand why the Debtor's counsel combined them in a single count.

complaint only if the plaintiff has not pled enough facts to state a claim for relief that is plausible on its face. Twombly, 550 U.S. at 547. A claim is facially plausible where the facts set forth in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Third Circuit has set forth a three (3) part test for evaluating a motion to dismiss:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations omitted).

When considering the merits of a motion to dismiss, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewed in the light most favorable to the plaintiff. E.g., Hishon v. King & Spalding, 467 U.S. 69 (1984); Taliaferro v. Darby Twp Zoning Board, 458 F.3d 181, 188 (3d Cir. 2006).  In doing so, the court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record ... [as well as] 'undisputedly authentic' documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss." Unite Nat'l Ret. Fund v. Rosal Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); see also In re Angulo, 2010 WL 1727999, at *12 n. 1 (Bankr. E.D. Pa. Apr. 23, 2010).

## V.   JURISDICTION

Before proceeding to the merits, I must begin by determining whether I have authority to enter a final order with respect to the claims stated in the Complaint.

As explained below, I conclude that the bankruptcy court has jurisdiction to hear all of the claims raised in the Complaint and has authority to enter a final order, except with respect to the Debtor's Count IV FDCPA claim against Ocwen.

### A.   Overview

Under 28 U.S.C. §1334(b), the bankruptcy court has subject matter jurisdiction over all proceedings "arising under" the Bankruptcy Code, "arising in" a bankruptcy case and "related to" a bankruptcy case.  E.g., In re Combustion Eng'g, Inc., 391 F.3d 190, 225-26 (3d Cir. 2004).[4]

Once subject matter jurisdiction exists, the bankruptcy court must determine whether a proceeding is "core" or "non-core."  The core/non-core distinction is significant because it determines the bankruptcy court's level of decision-making authority. See In re Seven Fields Dev. Corp., 505 F.3d 237, 254 (3d Cir. 2007). The bankruptcy court has the statutory authority to determine all core matters. See 11 U.S.C. § 157(b)(1). In a non-core proceeding, the bankruptcy court may not enter a final judgment, but may only submit proposed findings of fact and conclusions of law to the district court for de novo review, unless all parties agree that a final

---

[4]     The statute confers jurisdiction on the district court, but the district court is authorized to refer all bankruptcy proceedings to the bankruptcy judges for the district.  28 U.S.C. §157(a).  The district court in this district has done so.

judgment may be entered by the bankruptcy court. See 28 U.S.C. § 157(c); see also Halper v.

Halper, 164 F.3d 830, 836 (3d Cir. 1999).[5]

To determine whether a proceeding is core, the court must consult 28 U.S.C. § 157(b),

which sets forth an illustrative list of core proceedings, and evaluate whether the proceeding

involves claims that invoke a substantive right provided by the Bankruptcy Code or claims that

could arise only in the context of a bankruptcy case. Halper, 164 F.3d at 836.  Non-core

proceedings include the broader universe of all proceedings that are not core proceedings but are

nevertheless "related to" a bankruptcy case." Id. at 837.  A proceeding is related to the

bankruptcy case if it has the potential of affecting the bankruptcy estate, i.e., the outcome of the

proceeding will affect in some manner the property to be administered by the bankruptcy trustee

or the amount or priority of claims to be repaid.  See Pacor, Inc. v. Higgins, 743 F.2d 984, 994

(3d Cir. 1984), overruled on other grounds, Things Remembered, Inc. v. Petrarca, 516 U.S. 124

(1995); In re Shuman, 277 B.R. 638, 647 (Bankr. E.D. Pa. 2001).

In a proceeding involving multiple causes of action, the court must examine each cause

of action separately and determine its authority to enter a final judgment as to each claim.  In re

Mullarkey, 536 F.3d 215, 223 (3d Cir. 2008); Halper, 164 F.3d at 839); In re Drauschak, 481

B.R. 330, 339 (Bankr. E.D. Pa. 2012).

---

[5]    In 2011, the Supreme Court's decision in Stern v. Marshall, 564 U.S. 462 (2011), created a third category of matters in the universe of categories governing the division of authority between the district court and the bankruptcy court. In Stern, the Supreme Court held that Article III of the U.S. Constitution prohibits bankruptcy courts from issuing final orders in certain matters, even though  Congress classified them as core in 28 U.S.C. § 157(b). Such claims (commonly referred to as "Stern" claims) are now treated in most, if not all, respects as non-core. See Wellness Int'l Network Ltd. v. Sharif, ―― U.S. ――, 135 S. Ct. 1932 (2015).

## B.  Analysis of the Debtor's Claims

To analyze the extent of my authority to enter a final order in this proceeding, I find it helpful to engage in a functional analysis of the Debtor's claims.

In Counts I-III of the complaint, the Debtor's invokes various legal theories in seeking relief against U.S. Bank   Significantly, in each Count, the Debtor seeks only the partial or complete disallowance of the POC. (See Compl., Count I-III). Even in connection with her FDCPA claim, which could result in the entry of an affirmative money judgment against U.S. Bank, see 15 U.S.C. §1692k(a), the Debtor seeks only to "reduce the allowed secured claim by.  . $1,000.00 in statutory damages under the FDCPA," rather than the entry of a money judgment. (Compl., Count III Request for Relief).

There is no reason to question this court's jurisdiction over the Debtor's claims against U.S. Bank.  A proceeding relating to the allowance or disallowance of a proof of claim is a matter that "arises in" the bankruptcy case within the meaning of 28 U.S.C. §1334(b).  See In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996) (referring to the filing of proof of claim as a matter that "would arise only in bankruptcy").  And, the proceeding is a statutory core matter under 28 U.S.C. §157(b)(2)(B).  Consequently, the bankruptcy court may enter a final order resolving all of  the Debtor's claims against U.S. Bank.  See 28 U.S.C. §157(b)(1).[6]

Count IV stands on a different footing. In Count IV, the Debtor asserts a claim against Ocwen for a violation of the FDCPA.  The relief sought is the entry of a money judgment against Ocwen; not the reduction of the proof of claim (as in the case of U.S. Bank).  (Compl., Count IV, Request for Relief).

---

[6]     U.S. Bank did not consent to the entry of a final order by the bankruptcy court.  (U.S. Bank Statement Pursuant to Fed. R. Bankr. P. 7012) (Doc. # 16).  However, its lack of consent is unnecessary because the Debtor's claims against U.S. Bank are core proceedings.

There is no doubt that the court has subject matter jurisdiction over the FDCPA claim against Ocwen because it is "related to" the bankruptcy case. The claim, which arose post-petition, is property of the bankruptcy estate, see 11 U.S.C. §1306(a)(1), and the bankruptcy court has jurisdiction over estate property.  28 U.S.C. §1334(e).  Moreover, the outcome may affect case administration; if successful the claim could result in the receipt of money the Debtor can use to fund her chapter 13 plan.

However, the Debtor's FDCPA claim against Ocwen is non-core.  It does not emanate in any way from the Bankruptcy Code.  FDCPA claims generally do not depend on the existence of a bankruptcy case to be viable.[7]  And, the determination of the claim against Ocwen will not affect the allowance of U.S. Bank's POC, even if the relief requested is granted.  Accordingly, the court lacks authority to enter a final judgment over this non-core claim absent consent of the parties. Accord In re Feggins, 540 B.R. 895, 900 (Bankr. M.D. Ala. 2015), aff'd sub nom. LVNV Funding, LLC v. Feggins,  2016 WL 4582061 (M.D. Ala. Sept. 2, 2016).

The Debtor has consented to the entry of a final judgment in this adversary proceeding,[8] but Ocwen has not.[9]  Yet, in the Motion, Ocwen requests that the bankruptcy court enter an order dismissing the Debtor's claims with prejudice.

---

[7]    I recognize that   the FDCPA claim here arose out of the filing of a proof of claim and that proofs of claim exist only within a bankruptcy case.  But that factual circumstance does not alter the legal construct that an FDCPA claim is a distinct federal cause of action that has no nexus to the Bankruptcy Code.  The conduct the Debtor challenges as a kind of federal statutory tort just happened to have occurred in a bankruptcy case.  It could just as easily have occurred in any other court where creditors and their agents  seek to collect debts.

[8]    (Compl. ¶3); see Fed. R. Bankr. P. 7008.

[9]    (Ocwen Statement Pursuant to Fed. R. Bankr. P. 7012) (Doc. # 16).

Ocwen's initial lack of consent takes precedence over its later request for the entry of a final judgment.

A party cannot have it both ways, declining to consent to the court the entry of an adverse judgment but also asking the court to enter a favorable judgment against its party-opponent. "Heads I win, tails you lose" is fundamentally unfair. The consequence of Ocwen's lack of consent is inexorable: any final order on the non-core claim -- be it favorable or unfavorable to the non-consenting party --must be entered by the district court.

As explained in Part VI.E., infra, I conclude that the Debtor has failed to state a claim against Ocwen under the FDCPA. Therefore, my order resolving the Motion will recommend that the district court dismiss Count IV of the Complaint and provide for the Clerk to transmit this Memorandum and the accompanying order to the district court for further proceedings.


## VI. DISCUSSION

### A.  Count I Will Be Dismissed Based on the Doctrine of Res Judicata

### 1.

In Count I, the Debtor asserts that U.S. Bank's claim should be disallowed because the creditor cannot establish that it is entitled to enforce the Note and Mortgage on which the claim is based. The Debtor asserts that U.S. Bank is neither the holder nor the possessor of the Note.[10]

---

[10]    For a more detailed explanation of the legal theory underlying this cause of action, see In re Veal, 450 B.R. 897, 909-11 (B.A.P. 9th Cir. 2011); In re Kemp, 440 B.R. 624, 630-34 (Bankr. D.N.J. 2010); see also In re Walker, 466 B.R. 271, 278–80 (Bankr. E.D. Pa. 2012).

In response, U.S. Bank points to the Foreclosure Judgment and asserts that the Debtor's objection in Count I to the validity of the Claim is precluded by the doctrine of <u>res judicata</u>.  I agree.[11]

## 2.

<u>Res judicata</u>, also referred to as claim preclusion, provides that a final judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. <u>E.g.</u>, <u>Balent v. City of Wilkes-Barre</u>, 669 A.2d 309, 313 (Pa. 1995).[12]

The Pennsylvania courts often frame the <u>res judicata</u> elements as involving a final judgment in which there are an "(1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued," in the present lawsuit and the prior lawsuit in which the judgment was entered. <u>E.g.</u>, <u>In re Estate of Plance</u>, 175 A.3d 249, 270 (Pa. 2017) (quoting <u>Daley v. A.W. Chesterton, Inc.</u>, 37 A.3d 1175, 1189-90 (Pa. 2012); <u>see also</u> <u>City of Pittsburgh v. Zoning Bd. of Adjustment</u>

---

[11]    The Defendants also assert that Count I is barred by the <u>Rooker-Feldman</u> doctrine.  When applicable, that doctrine deprives a federal court of subject matter jurisdiction to adjudicate a matter previously determined in state court. In the absence of jurisdiction, the federal court should not decide merits issues (which include the applicability of <u>res judicata</u>).  <u>See</u> <u>Guarino v. Larsen</u>, 11 F.3d 1151, 1153 (3d Cir. 1993).  However, I have previously held that the <u>Rooker-Feldman</u> doctrine is inapplicable when raised in response to an objection to a proof of claim where the objection disputes facts that were necessary to the entry of the state court judgment on which the creditor's claim is based.  <u>See</u> <u>In re Razzi</u>, 533 B.R. 469, 479 (Bankr. E.D. Pa. 2015).

[12]    I look to state law because the application of preclusion doctrines in federal court based on a prior state court judgment is grounded in the federal full faith and credit statute, 28 U.S.C. § 1738, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." Thus, in determining whether the doctrine bars relitigation of an issue previously determined by a state court, a federal court must apply state law and evaluate whether relitigation would be precluded in the courts of the state in which the initial litigation took place. <u>Swineford v. Snyder County PA</u>, 15 F.3d 1258, 1266 (3d Cir.1994) ("Federal courts must give a state court judgment the same preclusive effect as would the courts of that state").

of City of Pittsburgh, 559 A.2d 896, 901 (Pa. 1989) (stating the four (4) elements slightly

differently).

As explained below, I conclude that all four (4) of these elements are satisfied here and

that, based on the state court Foreclosure Judgment, the Debtor is precluded from challenging

U.S. Bank's status as the holder of an allowable claim.


**3.**

It is frequently stated that the purpose of an action in mortgage foreclosure in

Pennsylvania is to determine whether a creditor secured by a mortgage may realize its collateral

by subjecting the secured property to sheriff's sale. See, e.g., Nicholas v. Hofmann, 158 A.3d

675, 696 (Pa. Super. Ct. 2017); New York Guardian Mortg. Corp. v. Dietzel, 524 A.2d 951, 953

(Pa. Super. Ct. 1987). However, along with the determination that the mortgage holder is

entitled to sell its collateral is the requirement that the court determine the amount of the debt

secured by the mortgage. As one commentator observed:

> The purpose of a mortgage foreclosure action is not to declare a forfeiture of the
> property; rather, it is to collect a debt from the proceeds of the sale of a particular
> parcel of property. Accordingly  .  .  .   a judgment in foreclosure must be entered
> for a sum certain.

See I. Ackelsberg, Residential Mortgage Foreclosure §9.1 (2011) (citations and quotations

omitted).

The requirement that a foreclosure action determine the amount of indebtedness secured

by the mortgaged property is reflected in the Pennsylvania Rules of Civil Procedure. Pa. R. Civ.

P. 1147(a)(6) requires that a foreclosure complaint set forth "a demand for judgment in the

amount due."[13]

There is a practical reason for this requirement:

> [A] reference to the indebtedness of a mortgagor [in a foreclosure judgment] is
> essential. An execution sale in foreclosure cannot be conducted in a vacuum; it
> must be a sale to satisfy an obligation. A sheriff could not possibly distribute the
> proceeds of a foreclosure sale among the various parties in interest without
> knowing the exact extent of the claim of the foreclosing mortgagee.

4 Goodrich Amram 2d §1147(a)(6):1 (West 2019).

The Pennsylvania Supreme Court has endorsed this principle, stating expressly:

"Judgment in a mortgage foreclosure action must be entered for a sum certain or no execution

could ever issue on it."  Landau v. W. Pennsylvania Nat. Bank, 282 A.2d 335, 340 (Pa. 1971);

see also Moncrief v. Chase Manhattan Mortg. Co., 275 F. App'x 149, 153, n.5 (3d Cir. 2008)

(nonprecedential).[14]

---

[13]     It is well settled, however, that a mortgage foreclosure judgment is *de terris*, i.e., a "judgment
against the land" that "imposes no personal liability on the mortgagors."  Meco Realty Co. v. Burns, 200
A.2d 869, 871 (Pa. 1964).  There is an exception to this legal principle.  A defendant may waive the right
to object to a complaint that joins an action in mortgage foreclosure with an action to impose personal
liability on the mortgagor.  See Insilco Corp. v. Rayburn, 543 A.2d 120, 123 (Pa. Super. Ct. 1988).

[14]     Unfortunately, Pennsylvania case law is not coherent on this issue, perhaps due to some
ambiguity in the Landau opinion.

In addition to stating that a mortgage foreclosure judgment must be entered in a sum certain,
Landau also stated:  "The mortgagors are unquestionably entitled to an accounting, but that accounting is
not due until the property is sold at sheriff's sale and distribution of the proceeds is made."  282 A.2d at
340.  The quoted sentence has spawned a line of cases that suggest that the entry of a liquidated judgment
in a foreclosure action is unnecessary.

In Cunningham v. McWilliams, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998), for example, the
Superior Court stated:

> In an action for mortgage foreclosure, the entry of summary judgment is proper if the
> mortgagors admit that the mortgage is in default, that they have failed to pay interest on
> the obligation, and that the recorded mortgage is in the specified amount. This is so even
> if the mortgagors have not admitted the total amount of the indebtedness in their
> pleadings. (citation omitted).                    ***[f.n. cont.]***

14

In this case, U.S. Bank obtained a judgment in mortgage foreclosure in a liquidated amount, $161,958.16.  The Foreclosure Judgment is a judicial determination that U.S. Bank has the right to foreclose against the Property based on that unpaid debt, i.e., that the Property is "liable" for this amount.

The Foreclosure Judgment thus necessarily determined that U.S. Bank has an allowable claim against the Property and, by extension, against the Debtor.  11 U.S.C. §101 defines a "claim" as "right to payment" whether "secured or unsecured" and it is incontrovertible that a claim enforceable against property of the bankruptcy estate is an allowable claim even if the debtor has no personal liability.  See 11 U.S.C. §102(2); see also Johnson v. Home State Bank, 501 U.S. 78, 85 (1991) ("a creditor who  . . .  has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the [Bankruptcy] Code").

This adversary proceeding involves the same parties as the action in which the Foreclosure Judgment was entered.  The issue determined adversely to the Debtor in the prior

---

*[f.n. 14  cont]*

.Since Cunningham was decided, numerous reported decisions in Pennsylvania (perhaps in excess of eighty (80)) cite the case for the propositions stated in the above-quoted language.

It is difficult to reconcile the principle that a mortgage foreclosure judgment must be entered in a sum certain with the principle that an unliquidated foreclosure judgment can be entered and a property sold at sheriff's sale subject to a post-sale financial reconciliation (i.e,. that a sum certain is not necessary).

Further, my experience suggests that, in practice, mortgage lenders do not press courts to grant them unliquidated foreclosure judgments or schedule sheriff's sales based on unliquidated foreclosure judgments.  This likely is so either because the judgment creditors need a liquidated judgment in order either to quantify their credit bidding rights at the sheriff's sale or need the liquidated judgment in order to collect a mortgage insurance or governmental guaranty.

15

action is the same as the claim the Debtor asserts here – whether the Property is liable to U.S.

Bank for an unpaid debt.  The parties are acting in the same capacity in both proceedings.

    For these reasons, U.S. Bank may invoke the doctrine of <u>res judicata</u> to preclude the

Debtor from challenging its status as the holder of an allowable bankruptcy claim.  Therefore,

Count I will be dismissed.[15]


### B.  Count II, for Partial Disallowance of the POC Will Be Dismissed, But Only in Part

### 1.

    In Count II the Debtor asserts that U.S. Bank may not collect escrow advances and legal

expenses in connection with the foreclosure process that were incurred after the entry of the

Foreclosure Judgment.  Based on the itemization attached to the POC, the Debtor calculates

these amounts as $8,611.60 and $4,222.98 respectively. (<u>See</u> Response at 11).

    The Debtor invokes the merger doctrine, which I summarized in a prior case:

> Upon entry of a foreclosure judgment "the terms of a mortgage [and note]
> are merged into a foreclosure judgment and thereafter no longer provide the basis
> for determining the obligations of the parties." <u>In re Stendardo</u>, 991 F.2d 1089,
> 1094–95 (3d Cir. 1993). Generally, the right to collect any pre-judgment amounts
> which could have been included in the judgment, and the right to collect any post-
> judgment charges provided for by the note and mortgage are extinguished.

---

[15]     In response to U.S. Bank's <u>res judicata</u> argument, the Debtor cites an earlier decision of this court in which I denied a motion to dismiss the debtor's cause of action that a mortgagee's proof of claim should be disallowed because the mortgagee could not establish that it was the holder or possessor of the note underlying its claim.  <u>See</u> <u>Faulkner v. M&T Bank</u>, 593 B.R. 293 (Bankr. E.D. Pa. 2018).  In <u>Faulkner</u>, the Debtor contended that the mortgagee also held a pre-petition judgment in mortgage foreclosure.

       <u>Faulkner</u>, which is not binding precedent, is distinguishable.

       In <u>Faulkner</u>, the mortgagee-creditor asserted that the pre-petition foreclosure judgment had been vacated  -- <u>i.e.</u>, that there was no pre-petition foreclosure judgment in existence when it filed its proof of claim.  Consequently, the creditor did not raise the <u>res judicata</u> argument asserted by U.S. Bank here and the issue raised here by U.S. Bank was not analyzed or decided in the <u>Faulkner</u>.

There is one key exception to the merger doctrine—it can be contracted around. A provision in the note or mortgage survives merger if it "clearly evidences [the parties'] intent to preserve the effectiveness of that provision post-judgment." <u>Stendardo</u>, 991 F.2d at 1095.

<u>In re Cohen-Harvin</u>, 571 B.R. 672, 675 (Bankr. E.D. Pa. 2017).

U.S. Bank seeks dismissal of Count II on the ground that that the exception to the merger doctrine applies, <u>i.e.</u>, the parties intended the provision of the Mortgage that authorizes fee-shifting in connection with the enforcement of the Mortgage to survive the entry of judgment.

In making this argument, however, U.S. Bank makes no reference to the post-judgment escrow advances; its argument addresses only the disputed post-judgment legal expenses. Based on the argument actually made by U.S. Bank and my independent review of the Mortgage, I see no basis to dismiss Count II insofar as the Debtor seeks to reduce U.S. Bank's allowed claim by the amount of the post-judgment escrow advances. <u>See, e.g.</u>, <u>In re Culler</u>, 584 B.R. 516, 523–24 (Bankr. E.D. Pa. 2018) (collecting cases).

In response to U.S. Bank's argument regarding the post-judgment legal expenses included in the POC, the Debtor contends that:

- the operative provision of the Mortgage does not evidence the parties' intent to permit U.S. Bank to assess the Debtor for post-judgment legal expenses;

- <u>EMC Mortg., LLC v. Biddle</u>, 114 A.3d 1057, 1072 (Pa. Super. Ct. 2015), a Pennsylvania Superior Court opinion that held to the contrary, was wrongly decided; and

- in any event, <u>Biddle</u> conflicts with the Third Circuit's decision in <u>Stendardo</u>, which this court is bound to follow.

(<u>See</u> Debtor's Response at 13-18).

The Debtor's argument is respectable. However, for the reasons stated below, I conclude that there is no conflict between <u>Stendardo</u> and <u>Biddle</u> and that Biddle was correctly decided.

Thus, I conclude that Count II states a claim for partial disallowance of the POC with respect to post-judgment escrow advances but does not state a claim with respect to post-judgment legal expenses.

## 2.

Section 22 of the Mortgage at issue here is titled "Acceleration; Remedies."  After providing that the lender must give notice to the borrower before accelerating the balance due, including notice of the borrower's right to cure a default, this provision provides that if the default is not cured, the lender

> may **foreclose** this Security Instrument **by judicial proceeding**.  Lender shall be entitled to **collect all expenses incurred in pursuing the remedies provided** in **this Section 22**, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

(emphasis added).

In <u>Biddle</u>, the Pennsylvania Superior Court construed a mortgage containing nearly the **<u>exact same language</u>**.  114 A.3d at 1067.  Focusing on the phrase "the remedies provided in this paragraph" to include the right to "foreclose . . . by judicial proceeding," the court construed the term "foreclose by judicial proceeding" to encompass the entire foreclosure process through sheriff's sale and not just the initiation of a foreclosure complaint through the procurement of a judgment in foreclosure.  Consequently, <u>Biddle</u> read the relevant provision of the mortgage to manifest the parties' intent to "contract around" the merger doctrine in order to provide the lender with the right to reimbursement of its post-judgment attorney's fees, costs, and title evidence, notwithstanding the merger doctrine.

The issue in <u>Stendardo</u>, on the other hand, was whether the debtor was liable for the lender's post-judgment advances for real estate taxes and property insurance premiums.  The mortgage in that case included the following provision:

> *in case default shall be made* in the payment of any installment of principal and interest, or any monthly payment hereinabove provided for, . . . *it shall and may be lawful for said Mortgagee forthwith to bring an Action of Mortgage Foreclosure,* . . .  or to institute other foreclosure proceedings upon this mortgage, *and to proceed to judgment and execution for recovery of* said principal debt, all interest thereon, *all sums advanced for payment of any ground rent, taxes, water rents, charges, claims or insurance premiums* as aforesaid....

991 F.2d at 1096–97 (emphasis in original).

In applying the merger doctrine and ruling for the debtor, the <u>Stendardo</u> court reasoned as follows:

> Although the Mortgage clearly obliges the Debtors to pay the taxes and insurance premiums at issue, it lacks any language indicating that this obligation is to survive foreclosure.  The parties could have easily included such a provision in the Mortgage had this been their intent. As written, the Mortgage is unambiguous. It does not require the Debtors to pay real estate taxes and insurance premiums following the merger of the Mortgage into the Judgment.

<u>Id.</u> at 1095–96.

### 3.

The Debtor asserts that a conflict exists between <u>Stendardo</u> and <u>Biddle</u>.  I disagree. The cases are distinguishable.  The different outcomes are due to differences in the relevant language of the provisions of the documents being construed by the court, not an irreconcilable conflict in the legal standards being applied.

The <u>Stendardo</u> mortgage described the remedy for default as the right to proceed to judgment and execution to recover "said" principal, interest and advances for taxes, water and

insurance.  The Third Circuit read that phrase to refer back to the phrase "default  .  .  .  in the

payment of any installment .  .  .  or any monthly payment."  Thus, the right to recover

referenced in this provision is the right to recover amounts included in the pre-judgment default.

Hence, the Court thus concluded that the mortgage "lacks any language indicating that this

obligation is to survive foreclosure." 991 F.2d at 1096.

The language in the mortgage in Biddle is different.  The Biddle mortgage refers to the

right to recover "expenses incurred" in pursuing the Section 22 remedies, rather than the

recovery of sums related to the pre-judgment default, as in Stendardo.  In short, different

mortgage provisions, different text -- no conflict between the cases.


## 4.

The Debtor next argues that Biddle was decided incorrectly and that I should not follow

it.  Again, I disagree.

The main thrust of Biddle -- that the lender's right to reimbursement for expenses

incurred in exercising its foreclosure remedy refers to the entire foreclosure process, not just the

entry of judgment -- is supported not only by the common understanding that a "foreclosure" is

not complete upon the entry of judgment, but, more importantly, by a close reading of the text

the mortgage.

The provision in this proceeding, Section 22 of the Mortgage, states that the lender's

remedies include "foreclosure by judicial proceeding **and** sale of the Property" (emphasis

added).  In other words, the sale of the property (after the entry of a foreclosure judgment) is

identified as separate Section 22 remedies.  This duality also is reflect in the provision

authorizing the lender to obtain reimbursement for its expenses, which refers to expenses

"incurred in pursuing **the remedies provided in this Section 22**." (emphasis added).   Thus, the

last sentence of Section 22 includes all post-judgment legal expenses necessarily incurred in

exposing the mortgaged property to a sheriff's sale.

The Debtor argues against this construction of Section 22 by comparing it to Section 27,

which states:

> Borrower agrees that the interest rate payable after judgment is entered on the
> Note or in an action in mortgage foreclosure shall be the rate payable from time to
> time under the Note.

The Debtor highlights the express reference to the continued applicability of the contract

interest rate "after judgment" in Paragraph 27 as standing "in stark contrast" to the language in

Section 22.  (Response at 13).  The Debtor contends that the comparison of the two (2)

provisions demonstrates that if the parties intended the lender's right to reimbursement of legal

expenses survive the merger of the Mortgage into the judgment, Section 22 would have made

some express reference to the lender's rights "after judgment."  In addition, the Debtor contends

that the comparison of the two (2) provisions, at the very least, establishes that Section 22 is

ambiguous and that its meaning is a question of fact that must be determined at trial.  See

Commonwealth by Shapiro v. UPMC, 208 A.3d 898, 910 (Pa. 2019) (citing and quoting Ins.

Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468–69 (Pa. 2006)).

This argument has some force, but ultimately, I am not persuaded.

I remain convinced by the Biddle court's holding that the terms "foreclosure" and "sale

of the property" are unambiguous and refer to two phases of the entire process, not just the entry

of judgment, and further, that the right to reimbursement for the expenses incurred in exercising

Paragraph 22 remedies encompasses the post-judgment process of bringing the property to

sheriff's sale.  The lack of parallelism between Paragraphs 22 and 27 reflects only that similar

concepts can be expressed using different words. That different language was employed does not, on its own, create an ambiguity.[16]

Further, the absence of more specific language in Paragraph 22 cuts both ways.  If the parties intended to restrict the lender's reimbursement rights post-judgment, they easily could have expressed that intent by stating that the lender shall be entitled to collect expenses incurred "in obtaining a judgment in foreclosure," rather than the broader reference to "pursuing the remedies" provided in Paragraph 22, which include "foreclosure by judicial proceeding **and** sale of the Property." (emphasis added).

For all these reasons, I conclude that Count II should be dismissed insofar as the Debtor seeks the <u>per se</u> disallowance of the post-judgment legal expenses based on the merger doctrine. However, Count II may proceed as to post-judgment escrow advances itemized in the POC.


### C.  The Count III §506(a), (d) Claim Will Be Dismissed Because 11 U.S.C. §1322(b)(2) Precludes the Modification of U.S. Bank's Secured Claim
### 1.

In Count III, the Debtor invokes 11 U.S.C. §506(a) and (d) and seeks an order bifurcating U.S. Bank's Claim into secured and unsecured components, as well as a determination that any lien U.S. Bank may have on the Property is void to the extent the total claim exceeds the amount of the allowed secured claim.  The Debtor posits that U.S. Banks's claim is secured only to the extent of its interest in the Debtor's (<u>i.e.</u>, the estate's) interest in the Property. <u>See</u> 11 U.S.C. §506(a).

---

[16]    The Debtor also suggests that the existence of a conflict itself between <u>Stendardo</u> and <u>Biddle</u> demonstrates ambiguity in Paragraph 22.  Simply because courts disagree on the meaning of written words does not establish an ambiguity.   <u>See In re Philadelphia Newspapers, LLC</u>, 599 F.3d 298, 313 (3d Cir. 2010) (a statutory provision is not ambiguous when two (2) courts reached opposite conclusions).

After taking into account that there are approximately $3,800 in liens against the Property with priority over U.S. Bank's position, the Debtor asserts that U.S. Bank's allowed secured claim is limited to 49% of the remaining value of the Property (because the Debtor has only a 49% interest in the Property).  The Debtor's legal theory, if applied, would reduce U.S. Bank's allowed secured claim to approximately $45,000.  (See Response at 5).

The potential roadblock in the way of the Debtor's approach is the oft-litigated "anti-modification" provision, 11 U.S.C. §1322(b)(2), which provides, in pertinent part, that a chapter 13 plan may "modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence**."  (emphasis added).

The Debtor attempts to address this problem by invoking 11 U.S.C. §1322(c)(2), a provision that, in certain circumstances discussed more fully below, overrides §1322(b)(2)'s anti-modification provision.[17]

Section 1322(c)(2) provides:

> (c) **Notwithstanding subsection (b)(2)** and applicable nonbankruptcy law—
>
> . . .
>
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real

---

[17]     The anti-modification clause of 11 U.S.C. §1322(b)(2) applies if the creditor's claim is secured "only by a security interest in real property that is the debtor's principal residence."

In its Memorandum in support of the Motion, U.S. Bank asserts that the Debtor could not establish that there is any security for U.S. Bank's claim other than the Debtor's principal residence.  In her Response, the Debtor concedes that point, but invokes 11 U.S.C. §1322(c)(2) as the basis for her contention that the anti-modification provision of §1322(b)(2) does not apply and that she may modify U.S. Bank's rights as the holder of the Foreclosure Judgment.  (Response at 20-21).

U.S. Bank did not discuss §1322(c)(2) in the Motion or supporting Memorandum and did not file a supplemental Memorandum on the issue.

> property that is the debtor's principal residence is due before
> the date on which the final payment under the plan is due, <u>the
> plan may provide for the payment of the claim as modified</u>
> pursuant to section 1325(a)(5) of this title.

(emphasis added).

As explained below, I conclude that §1322(c)(2) is inapplicable in this case.  Therefore,

the anti-modification clause of §1322(b)(2) prevents the Debtor from modifying U.S. Bank's

secured claim.

## 2.

To understand the relationship between §1322(b)(2) and §1322(c)(2), and why the

Debtor's argument fails, it is helpful to begin with some background and history.

Generally, 11 U.S.C. §1322 sets out the types of provisions a debtor may include in a

chapter 13 plan.  One significant rehabilitation tool accorded a chapter 13 debtor is the right to

cure prepetition defaults.  <u>See</u> 11 U.S.C. §1322(b)(5).  Another part of the chapter 13 toolkit is

found in §1322(b)(2), which authorizes the modification of the rights of both secured and

unsecured creditors.  Both §1322(b)(2) and (b)(5) permit a debtor to devise a plan that stretches

out over time payments that the debtor cannot otherwise pay in accordance with the contract

terms and applicable nonbankruptcy law. <u>See</u> <u>First Nat'l Fidelity Corp v. Perry</u>, 945 F.2d 61, 64

(3d Cir. 1991).

As mentioned earlier, §1322(b)(2) includes a limitation on the power to modify certain

claims secured only by real property that is the debtor's principal residence.  The prohibition

against the modification of those residential mortgages was intended to provide better access to

home financing by assuring lenders that their commitments and expectations would not be "frustrated." Perry, 945 F.2d at 64.

In 1987 and 1991, the Third Circuit issued two (2) decisions that restricted a debtor's ability to use §1322(b)(2) and (b)(5).

In the first of the two (2) decisions, In re Roach, 824 F.2d 1370 (3d Cir.1987), the court held that §1322(b)(5) permits a cure of any secured claims on which the last payment on the claim is due after the final plan payment, notwithstanding a pre-bankruptcy acceleration of the debt. Id. at 1376-77. However, the court also held that, under New Jersey law, a lender has an immediate right to payment in full upon the entry of a foreclosure judgment and, therefore, a debtor's right to invoke the cure provisions of §1322(b)(5) terminates upon the entry of judgment. Id. at 1378-79 ("[I]n the absence of statutory language, legislative history, or a significant federal interest mandating federal interference with state foreclosure judgments, we are constrained to hold that in New Jersey the right to cure a default on a home mortgage under § 1322(b) does not extend beyond the entry of a foreclosure judgment").

In the second of the two (2) decisions, Perry, the court read 11 U.S.C. §1322(b)(2)'s anti-modification clause expansively to preclude the confirmation of a chapter 13 plan that proposed to pay a foreclosure judgment in full over the term of the plan. The court reasoned:

> Roach stands for the proposition that under New Jersey law, a New Jersey home mortgage lender, upon the entry of a foreclosure judgment, has an immediate right to payment in full and that the cure provisions of § 1322(b)(5) do not authorize an alternation or deferral of that right. While § 1322(b)(2) would clearly authorize such an alteration or deferral if the lender's claims were not secured solely by a mortgage on the debtor's residence, First National's claim is so secured and its rights cannot be "modified" under that section.

945 F.2d at 65.

Against this judicial backdrop, in 1994 Congress enacted 11 U.S.C. §1322(c)(1) and (2).

Section 1322(c)(1) provides that "notwithstanding subsection (b)(2)," a debtor may cure a default pursuant to §1322(b)(3) or (5) "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." Thus, §1322(c)(1) established that the deadline for curing a default under the Bankruptcy Code is set by federal law (unless state law provides more expansive "cure" rights)[18] and permits a chapter 13 debtor to cure a default and reinstate a mortgage even after the entry of a foreclosure judgment, thereby legislatively overruling Roach. See, e.g., In re Mendez, 600 B.R. 321, 328 (Bankr. D.N.J. 2019).[19]

Section 1322(c)(2) expressly authorizes the modification of a claim secured only by a security interest in real property (i.e., a mortgage) and its payment in full pursuant to 11 U.S.C. §1322(a)(5),[20] if "the last payment on the original payment schedule . . . is due before the date on which the final payment under the plan is due." The legislative history states that the amendments "overrule . . . the result in [Perry] with respect to mortgages on which the last

---

[18]    See H.R. Rep. 103-835, 103rd Cong. 2nd Sess. 52.

[19]    In In re Connors, 497 F.3d 314, 320–21 (3d Cir.2007), the Court of Appeals clarified that the term "foreclosure sale" in §1322(c)(1) refers to the "fall of the gavel" at the sheriff's auction and not the delivery of the sheriff's deed following the sale.

[20]    11 U.S.C. §1325(a)(5) provides that the court shall confirm a plan if, inter alia, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." In other words, §1325(a)(5) requires that the allowed claim be paid in full over time, with interest, following confirmation of the plan.

payment on the original payment schedule is due before the date on which the final payment under the plan is due." H.R. Rep. 103-835, 103rd Cong. 2nd Sess. 52.[21]

### 3.

In this proceeding, the Debtor invokes §1322(c)(2).

The Debtor proposes to modify the Foreclosure Judgment by reducing the amount of U.S. Bank's allowed secured claim pursuant to 11 U.S.C. §506(a) and then paying the reduced, allowed claim over the life of the plan. The Debtor argues that the Foreclosure Judgment is a matured claim on which the last payment is due before the final payment under her proposed chapter 13 plan and thus that the §1322(b)(2) anti-modification clause may be overridden by §1322(c)(2).

To resolve this issue, I must decide whether §1322(c)(2) permits a chapter 13 debtor to provide for the modification and payoff of a secured claim pursuant to §1325(a)(5) where the claim is presently based on a foreclosure judgment, but was originally based on a security interest in the debtor's principal residence with a maturity date after the date on which the last chapter 13 plan payment is due. In other words, the question is whether the Foreclosure Judgment effectively transforms a long-term debt into a short-term debt because the judgment rendered the debt immediately payable, bringing it within the scope of §1322(c)(2).[22]

---

[21]    Sections 1322(b)(5) and 1322(c)(2) make for an interesting comparison. Section 1322(b)(5) may be employed to cure a default on long-term secured debts (i.e., a "secured claim on which the last payment is due after the date on which the final payment under the plan is due"). Section 1322(c)(2) overrides the anti-modification clause of §1322(b)(2) only for short-term debts (i.e., where "the last payment on the original payment schedule . . . is due before the date on which final payment under the plan is due").

[22]    The Debtor's proposed treatment of U.S. Bank's claim presents a second issue. *[f.n. cont.]*

This is not a new issue and several courts have opined on the subject.

The Debtor principally relies on In re Nepil, 206 B.R. 72 (Bankr. N.J. 1997).  In Nepil,

the bankruptcy court permitted the debtors to pay off a foreclosure judgment over the life of the

plan, notwithstanding the duration of the underlying mortgage.  To begin its statutory

construction, the court first concluded the language of §1322(c)(2) was not clear.  Noting that the

Bankruptcy Code does not define the words "original payment schedule," the court found the

phrase might take on "substantially different meanings depending on whether it is read broadly

or narrowly."  Id. at 74.  The court explained:

> On the one hand, the phrase can be understood merely to refer to the
> amortization schedule under which the note is satisfied. On the other hand, the
> phrase can be read to reach the entirety of the mortgagee's right to payment,
> including the fully accelerated payment reflected in the foreclosure judgment.

Id.

Emphasizing that the statute is designed to afford debtors in chapter 13 a greater

opportunity to form flexible payment plans in order to retain their homes, Nepil interpreted the

language of §1322(c)(2) broadly to apply to a foreclosure judgment, with the caveat that its

---

*[f.n. 22 cont.]*

Even assuming that 11 U.S.C. §1322(c)(2) applies, does the provision also permit a debtor, in addition to paying off the judgment over the life of the plan pursuant to 11 U.S.C. §1325(a), to modify the allowed secured claim itself by limiting it to the value of the collateral pursuant to 11 U.S.C. §506(a)?  Or is the §1322(c)(2) exception to §1322(b)(2) limited to modification of the payment terms of the claim, leaving intact §1322(b)'s prohibition against modifying the claim through a §506(a) bifurcation?

The apparent trend in the case law suggests that if §1322(c)(2) applies, a debtor can both bifurcate an undersecured claim and provide for payment of the reduced allowed secured claim through §1325(a).  See Hurlburt v. Black, 925 F.3d 154, 157 (4th Cir. 2019), overruling In re Witt, 113 F.3d 508 (4th Cir. 1997).

Here, because I conclude that §1322(c)(2) is inapplicable, I need not decide this second issue.

decision should not be construed as providing foreclosure judgment holders with anything less than the full amount of their judgment. The court stated:

> As a practical matter this Court can discern no difference among a fully matured mortgage debt, a mortgage on which the balloon payment is due, and a foreclosure judgment. In each circumstance the holder of the obligation is entitled to immediate full payment. Given the overall objectives of Chapter 13, the fact that the 1994 Amendments express a particular concern that debtors be afforded opportunity to save their homes, and that no practical difference exists between the rights of holders of matured mortgage obligations and holders of foreclosure judgments, the Court construes the language of §1322(c)(2) to include foreclosure judgments.

Nepil, 206 B.R. at 72; accord In re Winogora, 209 B.R. 632, 635 (Bankr. D.N.J. 1997).

There is contrary authority.

In re Rowe, 239 B.R. 44 (Bankr. D. N.J. 1999) found the language of §1322(c)(2) to be clear and deemed the term "original payment schedule" in §1322(c)(2) to refer only to those mortgages that mature prior to the last payment under the plan, i.e., (1) short term mortgages; (2) mortgages with balloon payments maturing before the date on which the last payment under the plan is due; and (3) long term mortgages maturing prior to the date on which the last payment under the plan is due.

Rowe concluded that the phrase "original payment schedule" does not extend §1322(c)(2) to cases in which a foreclosure judgment accelerated the mortgage. The court reasoned that Congress intended to protect debtors with short term mortgages because those types of loans are riskier for debtors. Further, Congress intended to provide additional protection to debtors with long-term mortgages that mature prior to a final payment under a chapter 13 plan because such debtors have already made most of their loan payments and likely have acquired substantial equity in the residence -- a worthy competing interest as compared to the policy of protecting the mortgage industry by way of the anti-modification clause. See Rowe, 239 B.R. at 49-52. In rejecting the reasoning of Nepil and Winogora, Rowe concluded that the references to

"curing" or "modifying" in §1322(c)(1) and §1322(c)(2) respectively, speak to the <u>underlying mortgage</u>, not the foreclosure judgment. <u>Rowe</u>, 239 B.R. at 52.

Fifteen (15) years after <u>Rowe</u> was decided, a bankruptcy court in the Middle District of Pennsylvania followed its holding. <u>See</u> <u>In re Barbone</u>, 2014 WL 4976822 (Bankr. M.D. Pa. Oct. 3, 2014). The court stated: "Logic would suggest that the simple acceleration of the mortgage would not change 'the original payment schedule of the claim' and whether it comes due during the term of the plan." <u>Id.</u> at *1. Consequently, <u>Barbone</u> rejected the debtors' attempt to apply §1322(c)(2) to strip off a second mortgage that had been accelerated but not subjected to foreclosure.

More recently, <u>In re Goione</u>, 595 B.R. 477, 486 (Bankr. D.N.J. 2019) acknowledged that courts have struggled with the phrase "last payment on the original payment schedule" and whether that encompasses foreclosure judgments or mortgages with maturity dates falling after the final chapter 13 plan payment. Persuaded by the prior decisions of <u>Rowe</u> and <u>Barbone</u>, the <u>Goione</u> court concluded that §1322(c)(2) does not encompass long-term mortgages that have been reduced to a foreclosure judgment. <u>Goione</u>, 595 B.R. 477 at 486-87. Other courts have reached the same conclusion. <u>See</u> <u>In re Hinds-Santiago</u>, 2015 WL 239211 (Bankr. S.D. Fla Jan 15, 2015); <u>In re Anderson</u>, 458 B.R. 494 (Bankr. E.D. Wis. 2011); <u>In re Duran</u>, 271 B.R. 888 (Bankr. D. Wy 2001).

I am persuaded by the second line of cases described above.

The language "original payment schedule" is plain and clear. It can only refer to the last payment due <u>under the original note</u> rather than to the date the accelerated debt is due. Otherwise, the words "original payment schedule" would be rendered meaningless. As explained by <u>Rowe</u>, had Congress intended §1322(c)(2) to include accelerated loans and

foreclosure judgments so that the last payment of those types of debts became "due before the date on which the final payment under the plan is due," the phrase "original payment schedule" – referring to the unaltered remittance timetable - would have been omitted. <u>Rowe</u>, 239 B.R. at 50.

For these reasons, I conclude that the Debtor cannot wedge U.S. Bank's long-term mortgage debt into §1322(c)(2) simply because the debt was accelerated and reduced to judgment pre-petition. As a result, the anti-modification clause of §1322(b)(2) prevents the Debtor from obtaining the relief requested in Count III because the relief would modify U.S. Bank's rights. <u>See</u> <u>Nobelman v. Am. Sav. Bank</u>, 508 U.S. 324 (1993). Count III will be dismissed to the extent the Debtor seeks a determination that U.S. Bank's claim may be modified through a §506(a) bifurcation and then paid in full pursuant to 11 U.S.C. §1325(a)(5).

### D. The Count III FDCPA Against U.S. Bank Will Be Dismissed

#### 1.

Count III asserts that U.S. Bank is liable for damages under the FDCPA due to its failure to recognize the existence and legal consequences of the Foreclosure Judgment and its demand in the POC for payment of charges that are legally uncollectible due to the merger doctrine. <u>See generally</u> <u>Stendardo</u>, 991 F.2d at 1094–95; <u>Cohen-Harvin</u>, 571 B.R. at 680.

Specifically, the debtor asserts that U.S. Bank violated the FDCPA by:

- making a "false representation of … the character, amount, or legal status" of the debt under 15 U.S.C. §1692e(2);

- threatening "to take . . .  action that cannot legally be taken or that is not intended to be taken" in connection with the debt under 15 U.S.C. §1692e(5); and

- using "unfair or unconscionable means to collect or attempt to collect" the debt, by seeking to collect an amount not "expressly authorized by the agreement creating the debt or permitted by law" under 15 U.S.C. §1692f(1).

(See Response at 24-26).

As explained below, the Debtor fails to state a viable cause of action pursuant to the FDCPA.

## 2.

The FDCPA was enacted "in order to eliminate abusive debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of privacy." Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir. 2013). The FDCPA establishes both general and specific standards of proscribed debt collection conduct[23] and provides a private right of action to any person adversely affected by a statutory violation.[24]

The FDCPA distinguishes between "creditors and "debt collectors."

A creditor is defined as

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. §1692a(4).

A debt collector is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

---

[23]    See 15 U.S.C. §§1692c, 1692d, 1692e, 1692f.

[24]    See 15 U.S.C. §§1692k.

> Notwithstanding the exclusion provided by clause (F) of the last sentence
> of this paragraph, the term includes any creditor who, in the process of
> collecting his own debts, uses any name other than his own which would
> indicate that a third person is collecting or attempting to collect such debts
> . . . .

15 U.S.C. §1692a(6).

Critically, the private right of action in the FDCPA, 15 U.S.C. §1692k, exists only against a "debt collector."  In a successful action under the FDCPA brought by an individual, §1692k imposes liability for actual damages, "additional damages" up to $1,000.00, and reasonable attorney's fees and costs.

### 3.

It is clear from the allegations in the Complaint that U.S. Bank is not a "debt collector" pursuant to the FDCPA.  U.S. Bank filed a proof of claim asserting that it is the entity to whom the Debtor owes a debt.[25]

The law is well settled that, except in two (2) situations, creditors are not debt collectors and are statutorily exempt from liability under the FDCPA, §1692k.  E.g., Tepper v. Amos Fin.,

---

[25]    The Complaint alleges that U.S. Bank asserts a claim against the Debtor in the amount of $192,536.07, secured by a lien on the Debtor's residence.  In Paragraph 11, the Complaint states that "[t]he proof of claim was filed by U.S. Bank **through its debt collectors Ocwen** and Phelan Hallinan." (emphasis added).

I am aware that elsewhere in the Complaint, the Debtor alleges that U.S. Bank is a debt collector within the meaning of the FDCPA.  (Compl. ¶6).  However, I need not blindly accept legal conclusions cloaked as factual allegations.  See Santiago, 629 F.3d at 130 (allegations that are no more than conclusions "are not entitled to the assumption of truth" in deciding a Rule 12(b)(6) motion).  Under any fair reading of the Complaint, it is apparent that the Debtor alleges that U.S. Bank is the creditor to whom the debt is owed and that Phelan Hallinan and Ocwen were debt collectors assisting U.S. Bank in the collection of the debt.

The Debtor dismissed Phelan Hallinan as a Defendant.  Below I address the FDCPA claim against Ocwen. See Part VI.E, infra.

LLC, 898 F.3d 364, 366 (3d Cir. 2018); <u>Jacques v. Chase Bank USA</u>, 2016 WL 423770, at *7

(D. Del. Feb. 3, 2016), <u>aff'd</u>, 668 F. App'x 437 (3d Cir. 2016) (citing <u>Hepler v. Washington Mut.</u>

<u>Bank, F.A.</u>, 2009 WL 1045470 at *4 (C.D. Cal. Apr. 17, 2009)).

First, a creditor may nonetheless be a debt collector if that person "uses any

instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the collection of any debts" 15 U.S.C. §1692a(6).  This is known as the "principal

purpose" test.  <u>Tepper</u> illustrates its application.  In <u>Tepper</u>, the court held that a creditor whose

sole business is to purchase existing debt and then collect that debt on its own behalf, may be a

debt collector under the "principal purpose" test.  898 F.3d at 370–71.

Second, a creditor may be a "debt collector" if "in the process of collecting his own

debts, [the creditor] uses any name other than his own which would indicate that a third person is

collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

There are no allegations in the Complaint that bring U.S. Bank within either of these

exceptions to the general rule that creditors are not subject to FDCPA liability.  Therefore, Count

III fails to state an FDCPA claim against U.S. Bank.


### E.  The Court Will Recommend that the District Court Dismiss the Count IV FDCPA Claim Against Ocwen

The Complaint posits a similar theory against Ocwen in Count IV. The Debtor asserts

that in filing the POC to collect a debt on behalf of U.S. Bank, Ocwen failed to recognize the

consequence of both the Foreclosure Judgment and the merger doctrine and, as a result,

demanded payment of charges that were legally uncollectible.  In doing so, according to the

Debtor, Ocwen mischaracterized the nature, amount, and legal status of the debt.  <u>See</u> 15 U.S.C.

§1692e(2).

34

Resolution of this claim on the merits would require a determination of several

substantial issues, including:

- whether there is a fundamental conflict between the bankruptcy claims
  process and a cause of action under the FDCPA, i.e., can a creditor violate the
  FDCPA merely by filing a proof of claim?  Compare Simon v. FIA Card
  Servs., N.A., 732 F.3d 259, 273–74 (3d Cir. 2013) with Midland Funding,
  LLC v. Johnson, 137 S. Ct. 1407, 1415-16 (2017); and

- whether it is possible for a creditor to file a proof of claim that takes into
  account the effect of the merger doctrine while simultaneously complying
  with the requirements of the Bankruptcy Code and Rules (specifically Official
  Form 410A, Parts 2 and 3).

These issues are weighty.  I express no opinion on their merits because it is unnecessary

to reach them in this proceeding.  For another, more fundamental reason, Count IV fails to state a

claim: there are no facts alleged in the Complaint that suggest that Ocwen engaged in any

conduct that violated the FDCPA.

The gravamen of Count IV is that the POC was a communication that contained false

information and that the party making the communication therefore is liable for violating the

FDCPA.  The initial and fatal flaw in this theory is that the POC was not a communication **from

Ocwen**.

The POC was filed by Phelan Hallinan on behalf of U.S. Bank.  While Ocwen

(U.S.Bank's servicer) may have taken other actions in the course of servicing this loan to collect

the debt on behalf of U.S. Bank, there are no facts in the Complaint that link Ocwen to the filing

of the POC.  Phelan Hallinan, not Ocwen, filed the POC to collect a debt owed to U.S. Bank and,

therefore, is the source of the communication alleged to be a violation of the FDCPA.  Ocwen is

mentioned in the POC, but only passively as the party to whom notices and payments should be

sent.  The Debtor does not allege that Ocwen took any action in connection with or was

35

responsible in any way for filing the POC or its contents.   These facts fall short of alleging that

Ocwen engaged in communication or other conduct that violated the FDCPA.


## VII.   CONCLUSION

For the reasons stated above, the motion of U.S. Bank and Ocwen to dismiss the

Complaint will be granted and the Complaint will be dismissed with prejudice, except for Count

II, which survives in part.[26]  An appropriate order follows.


**Date: October 24, 2019**

                                                 **ERIC L. FRANK**
                                                 **U.S. BANKRUPTCY JUDGE**

---

[26]        It is well settled that a court should grant a plaintiff leave to amend "unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Given the basis for my determination that Counts I, III, and IV of the Complaint fail to state a claim, I do not believe that there are any additional factual averments the Debtor could make that would cure the legal deficiencies. Therefore, I conclude that amending the Complaint would be futile.