## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re   GERALDINE BERNADIN, | : | Chapter 13 |
| | : | |
| **Debtor** | : | |
| ———————————————— | : | **Bky. No. 18-12717 ELF** |
| | : | |
| **GERALDINE BERNADIN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| | : | **Adv. No. 18-281** |
| | : | |
| **U.S. BANK NATIONAL ASSOCIATION, as Trustee,** | : | |
| **Successor in Interest to Wachovia Bank,** | : | |
| **National Association as Trustee for Merrill Lynch** | : | |
| **Mortgage Investors Trust, Mortgage Loan** | : | |
| **Asset-Backed Certificates, Series 2005-A6,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **OCWEN LOAN SERVICING, LLC,** | : | |
| | : | |
| **Defendants** | : | |
| ———————————————— | | |

# M E M O R A N D U M

## I.  INTRODUCTION

In this adversary proceeding, Plaintiff Geraldine Bernadin ("the Debtor"), a chapter 13 debtor, seeks the entire or partial disallowance of a proof of claim ("the POC") filed by Defendant U.S. Bank National Association ("U.S. Bank").  The Debtor also seeks affirmative relief under the Fair Debt Collections Practices Act ("the FDCPA"), 15 U.S.C. §§1692 et seq.

U.S. Bank holds the mortgage on the Debtor's residential real property.  Ocwen Loan

Servicing, LLC ("Ocwen") services the mortgage and also is a named defendant.[1]  The law firm

Phelan Hallinan Diamond & Jones, LLP ("Phelan Hallinan") signed and filed the POC on behalf

of U.S. Bank.  Phelan Hallinan was initially named as a co-defendant, but by agreement, has

been dismissed as a defendant.

U.S. Bank and Ocwen filed a motion to dismiss the Complaint ("the Motion" or

"Ocwen's Motion").

By Order dated October 24, 2019, as modified on October 28, 2019 (collectively, "the

Order"), I granted the Motion in large part.  I dismissed causes of action against U.S. Bank with

prejudice, except for Count II.  Count II was dismissed in part, but survived insofar as the Debtor

seeks partial disallowance of the charges included in the POC for escrow advances made by U.S.

Bank after it obtained a judgment in mortgage foreclosure against the Debtor's property.

With respect to Ocwen, the Order recommended that the district court dismiss Count IV

of the Complaint, which asserts a claim for violation of the FDCPA.[2]

---

[1]      Initially, the Debtor also asserted  causes of action against U.S. Bank and Ocwen pursuant to the
Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 et seq. and
Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. §§2270.1 et. seq., but withdrew those
claims.

[2]      Because I found Count IV to be a non-core claim, and Ocwen had not consented to the entry of a
final order by the bankruptcy court, I concluded that only the district court could enter the recommended
dismissal of the claim without leave to amend.  Bernadin I, 2019 WL 5556505, at *5.

The Order was accompanied by a lengthy memorandum, now reported as In re Bernadin, 2019 WL 5556505 (Bankr. E.D. Pa. Oct. 28, 2019) (Bernadin I).[3]

On November 7, 2019, the Debtor filed a Motion to Reconsider the Order ("the Reconsideration Motion"), asking the court to reverse itself with regard to the disposition of Count IV against Ocwen.

Essentially, the Reconsideration Motion argues that I failed to consider certain facts alleged in the Complaint which the Debtor contends adequately state a claim for relief under the FDCPA. Alternatively, the Debtor argues that even if the facts alleged in the Complaint with regard to Count IV fell short, she should have been given the opportunity to file an amended complaint to supplement those facts.

Ocwen filed a response to the Reconsideration Motion on November 22, 2019. On December 10, 2019, a hearing on the Reconsideration Motion was held and concluded.

As explained below, upon further consideration of the allegations in the Complaint and the POC attached as an Exhibit to the Complaint, and after drawing reasonable inferences in favor of the Debtor, as I must,[4] I conclude that the Complaint includes sufficient factual allegations suggesting that Ocwen participated in the course of conduct the Debtor claims violated the FDCPA (i.e., the filing of the POC that included, inter alia, a false representation of the character, amount, or legal status of the subject debt) and consequently is potentially liable under the statute.

---

[3]  The factual and procedural background of this adversary proceeding is discussed in Bernadin I and will not be repeated here.

[4]  E.g., Hishon v. King & Spalding, 469 U.S. 69, 73 (1984); Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

3

Having reached this initial conclusion, it becomes necessary to consider a legal argument advanced in the Ocwen Motion and repeated in response to the Reconsideration Motion, i.e., that the Supreme Court's decision in Midland Funding, LLC v. Johnson, 137 S. Ct. 1407 (2017) stands for the proposition that a debt collector cannot violate the FDCPA by filing a proof of claim in a bankruptcy case.[5]

As explained below, I am unpersuaded by Ocwen's "per se" argument; I conclude that the Supreme Court has not ruled on the issue that is before this court.  Consequently, I hold that the outcome is controlled by the Third Circuit's decision in Simon v. FIA Card Servs., N.A., 732 F.3d 259 (3d Cir. 2013).  Further, after applying the legal principles stated in Simon, I conclude that the Debtor is not categorically barred from asserting an FDCPA claim based on the conduct alleged in the Complaint related to the filing of a proof of claim.

For these reasons, the Reconsideration Motion will be granted.  Paragraph 4 of the October 24, 2019 Order will be vacated and the Ocwen Motion will be denied insofar as it requests dismissal of Count IV of the Complaint.

---

[5]      In Bernadin I, I identified but did not resolve the relevant issues related to this legal argument. See 2019 WL 5556505, at *18.

4

## II. STANDARD FOR RECONSIDERATION

In federal practice, the rules of court do not expressly provide for a "motion for reconsideration." Nevertheless, such motions are filed regularly, and if timely (i.e., filed no later than 14 days after the entry of judgment), are treated as motions to alter or amend a judgment under Fed. R. Civ. P. 59(e).[6]

In this adversary proceeding, the Reconsideration Motion was timely filed under Rule 59(e).[7]

Requests for reconsideration are "not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Hill v. Tammac Corp., 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006) (quoting Ogden v. Keystone Residence, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002)). Reconsideration is considered an extraordinary remedy that should be granted sparingly. See, e.g., Van Buskirk v. United Group of Companies, Inc., 935 F.3d 49, 54 (2d Cir. 2019); accord In re Kuhar, 2007 WL 2245912, at *2 (Bankr. E.D.Pa. Aug.1, 2007).

The traditional requirement for reconsideration is either: (1) an intervening change in controlling law; (2) the existence of new evidence not previously available; or (3) the need to correct a clear error of law or fact or prevent manifest injustice. E.g, Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); Harsco Corp. v. Zlotnicki, 779

---

[6]    Rule 59 is made applicable to bankruptcy cases by Fed. R. Bankr.P. 9023. In re Myers, 2007 WL 2428694, at *4 (Bankr. E.D. Pa. Aug.22, 2007); see also In re Jager, 597 B.R. 796, 804 (Bankr. W.D. Pa. 2019).

[7]    The Reconsideration Motion was filed on November 7, 2019, fourteen (14) days after the entry of the October 24, 2019 Order.

F.2d 906, 909 (3d Cir. 1985); <u>Allen v. J.K. Harris & Co.</u>, 2005 WL 2902497, at *1 (E.D. Pa.

Nov.2, 2005).

That said, the court's authority to reconsider a prior order is not inflexibly circumscribed

by the Rule 59(e) standard.  The court possesses "inherent power" over its interlocutory orders

"and can reconsider them when it is consonant with justice do so."  <u>In re Energy Future Holdings</u>

<u>Corp.</u>, 904 F.3d 298, 310 (3d Cir. 2018) (quoting <u>United States v. Jerry</u>, 487 F.2d 600, 605 (3d

Cir. 1973)).  The key consideration is whether the court overlooked facts or legal issues that

were properly presented.  <u>See</u> <u>Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.</u>, 246

F. Supp. 2d 394, 398–99 (E.D. Pa. 2002); <u>see also</u> <u>In re Stuart</u>, 402 B.R. 111, 120 (Bankr. E.D.

Pa. 2009).


# III.  DISCUSSION

## A.  Reconsideration Is Appropriate

### 1.

In <u>Bernadin I</u>, I recommended that the district court dismiss the Debtor's claim against

Ocwen because the POC was filed by Phelan Hallinan on behalf of U.S. Bank and "was not a

communication **from Ocwen**." 2019 WL 5556505, at *18 (emphasis in original).  Further, I

stated that the Complaint did not allege that Ocwen took any action in connection with or was

responsible in any way for filing the POC or its contents.  <u>Id.</u> at *18.[8]

---

[8]      I also recommended dismissal without leave to amend because I did not believe that there were
any additional factual averments the Debtor could make that would cure the legal deficiencies in Count
(continued...)

Further review of both the Reconsideration Motion and the record in this proceeding leads me to conclude that I overlooked certain material alleged facts, and failed to make certain reasonable inferences therefrom, making it appropriate to reconsider the recommended dismissal of Count IV.  After giving appropriate consideration to the Complaint and related exhibits, and drawing all reasonable inferences in favor of the Debtor, I conclude that the Debtor adequately pled that Ocwen participated in the filing of the POC that the Debtor contends violated the FDCPA.

**2.**

In Bernadin I, I stated:

> Ocwen is mentioned in the POC, but only passively as the party to whom notices and payments should be sent. The Debtor does not allege that Ocwen took any action in connection with or was responsible in any way for filing the POC or its contents. These facts fall short of alleging that Ocwen engaged in communication or other conduct that violated the FDCPA.

2019 WL 5556505, at *18.

The Debtor contends that the Complaint adequately alleges that Ocwen was involved in filing the POC.

In making this argument, the Debtor points to the following portions of the Complaint:

---

[8](...continued)
IV.  Bernadin I, 2019 WL 5556505, at *18 n.26 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

- Paragraphs 5, 11 and 64, all of which state that Ocwen "filed" the POC on U.S. Bank's behalf;

- Paragraphs 29 and 32, which state that Ocwen (and others) demanded payments in the POC that are legally uncollectible.

(See Reconsideration Motion at 3).

This part of the Debtor's argument is not persuasive.

It is an uncontestable fact that Ocwen did **not** file the POC.  The court records irrefutably demonstrate that the POC was filed by Phelan Hallinan on behalf of U.S. Bank, not Ocwen.  Just as the court is not bound to accept legal conclusions cast as factual allegations in a complaint, Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009), neither must the court accept facts that are contrary to those subject to judicial notice.[9]

But that does not end the inquiry.  The Debtor suggests that, regardless of who actually filed the POC, its unlawful content was prepared or derived from information provided by Ocwen.  (Reconsideration Motion ¶¶ 5, 13, 15).

Taking into account the requirement that all reasonable inferences be drawn from the allegations in the Complaint and viewed in the light most favorable to the plaintiff,  one can reasonably infer that the Complaint alleges that Ocwen bore at least some responsibility for the content of the POC filed by Phelan Hallinan.  I reach this conclusion for two (2) reasons.

---

[9]     The bankruptcy court may take judicial notice of its own docket.  See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n.1 (Bankr. E.D. Pa. Aug. 26, 1998); see also In re Indian Palm Assocs., Ltd., 61 F.3d 197, 205 (3d Cir.1995).

8

First, it is undisputed that at all relevant times U.S. Bank engaged Ocwen to service the subject mortgage loan.  Drawing on my judicial experience and common sense, as I am obliged to do in evaluating a motion under Rule 12(b)(6),[10] and drawing all reasonable inferences in favor of the plaintiff,  it is reasonable to infer that Phelan Hallinan (U.S. Bank's attorney) obtained the mortgage loan history from the mortgage servicer (Ocwen) and therefore, that the charges in the POC giving rise to the Debtor's FDCPA claim were included in the POC at Ocwen's request or, at a minimum, were based based on information provided by Ocwen.[11]

Second, there are some textual clues in the POC that point to Ocwen.

The POC directs that all payments be made to Ocwen.  Further, Part 2 of the Mortgage Proof of Claim Attachment contains a calculation of various charges included in the "total debt calculation," accompanied by supporting invoices submitted to Ocwen, as well as an escrow account disclosure statement prepared on Ocwen letterhead.  It is fair to infer from these documents that Ocwen maintained the account records used in calculating and preparing the demand for payment made in the POC.[12]

---

[10]    Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009); United States ex rel. Bookwalter v. UPMC, 938 F.3d 397, 417 (3d Cir. 2019).

[11]    The role that the Mortgage Proof of Claim Attachment plays in the claims process and in the merits of the FDCPA claim in this adversary proceeding is discussed in more detail in Part III.D.4, infra.

[12]    I also note that, at oral argument, counsel for Ocwen acknowledged that Ocwen provided Phelan Hallinan with the numbers and relevant information required to complete the POC and attachments.

9

Thus, <u>Bernadin I</u> failed to draw the appropriate inferences in favor of the Debtor. Once those inferences are drawn, it is fair to read the Complaint as alleging that Ocwen participated in the process that resulted in the filing of the POC that the Debtor alleges violated the FDCPA.

### B. Ocwen is Potentially Subject to Liability Under the FDCPA, Even Though It Did Not File the POC

The next issue is whether Ocwen's participation in the process resulting in Phelan Hallinan's filing of the POC is sufficient to state a claim under the FDCPA, even though Ocwen itself did not file the POC. At oral argument, Ocwen suggested that Phelan Hallinan bore responsibility for the content of the POC that is challenged by the Debtor.

As explained below, Ocwen's role in the POC process (based on the facts stated in the Complaint and the reasonable inferences therefrom) suffices to make out a plausible claim for relief under FDCPA.

In this Circuit, it is settled that if a creditor retains two (2) debt collectors,[13] or the retained debt collector engages a second debt collector to assist in its collection efforts, and the second debt collector supplies information used in debt collection activity that violates the FDCPA, can both debt collectors be held liable  In <u>Pollice v. Nat'l Tax Funding, L.P.</u>, 225 F.3d 379, 404 (3d Cir. 2000), the Third Circuit held that a debt collector may be held liable under the

---

[13]     The Complaint alleges that both Ocwen and Phelan Hallinan are "debt collectors" under the FDCPA. (Compl. ¶¶59, 60).

FDCPA for the unlawful debt collection activities carried out by another debt collector on its

behalf.[14]

Recently, in Barbato v. Greystone All., LLC, 916 F.3d 260 (3d Cir. 2019), cert. denied

sub nom. Crown Asset Mgmt. LLC v. Barbato, 140 S.Ct. 245 (2019), the Third Circuit

reaffirmed both the holding in Pollice and its reasoning, i.e., that a debt collector may be held

liable for unlawful collection activities carried out by another on its behalf "because an entity

that is itself a 'debt collector' – and hence subject the FDCPA - should bear the burden of

monitoring the activities of those it enlists to collect debts on its behalf." Id. at 270 (quoting

Pollice, 225 F.3d at 405).

Neither Pollice nor Barbato involved an FDCPA claim against a debt collector that was

based on the conduct of an attorney co-debt collector. But in dictum, the Pollice court endorsed

the principle that a debt collector is "liable [under the FDCPA] for the attorney's misconduct if

the client is itself a debt collector as defined in the statute." Pollice, 225 F.3d at 404 (quoting

First Interstate Bank of Fort Collins v. Soucie, 924 P.2d 1200, 1202 (Colo. Ct. App.1996)). At

least two (2) courts in this Circuit have imposed FDCPA liability on a debt collector based on

the misconduct of a debt collector attorney retained by the debt collector to assist in the

collection of a debt. See DeHart v. U.S. Bank, N.A. ND, 811 F. Supp. 2d 1038, 1055 (D.N.J.

2011); Martsolf v. JBC Legal Grp., P.C., 2008 WL 275719 at *10–11 (M.D. Pa. Jan. 30, 2008).

---

[14]    In Tepper v. Amos Fin., LLC, 898 F.3d 364, 367 (3d Cir. 2018), the court acknowledged that one
of the holdings in Pollice was overruled by the Supreme Court in Henson v. Santander Consumer USA
Inc., 137 S.Ct. 1718 (2017). The overruled holding is unrelated to the issues in this adversary proceeding.

Here, if Ocwen retained Phelan Hallinan to assist in its servicing efforts by filing the POC, case law supports the conclusion that Ocwen may be held liable if the filing of the POC violated the FDCPA.

I am cognizant that the Complaint contains no express allegation that Ocwen retained Phelan Hallinan.  But again, given the responsibilities that Ocwen had as the servicer of the mortgage, it is a reasonable to infer from the facts alleged in the Complaint and the relevant record that Ocwen engaged Phelan Hallinan to assist in the collection efforts in the bankruptcy case, which included the preparation and filing of the POC.[15]

Alternatively, even if there was no formal attorney-client relationship between Ocwen and Phelan Hallinan, the Debtor's allegation that Ocwen assisted in the preparation of the POC satisfies the "facial plausibility" standard stated <u>Iqbal</u> and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007) for evaluating the legal sufficiency of a complaint.   <u>See, e.g.</u>, <u>Som v. Daniels Law Offices, P.C.</u>, 573 F. Supp. 2d 349, 356 (D. Mass. 2008) (holding that employee/shareholder of debt collector entity may be held liable for FDCPA violation based on alleged "involve[ment] in formulating, implementing, and/or ratifying" the collection conduct at issue); <u>Egli v. Bass</u>, 1998 WL 560270, at *2 (N.D. Ill. Aug. 26, 1998) (finding the plaintiff to have stated a claim alleging owner and principal of company liable under FDCPA because she devised and implemented the company's procedures and personally approved the letter at issue).

Whether the degree of Ocwen's participation in the filing of the POC suffices to establish

---

[15]    At oral argument, the Debtor's counsel stated that, if given the opportunity to amend the Complaint (assuming that amending the Complaint were necessary), the Debtor would allege that Ocwen retained Phelan Hallinan.  Given the inference I draw, it is not necessary to engage in the exercise of a formal amendment to the Complaint.

an FDCPA claim ultimately will depend on the facts developed by the Debtor.  My conclusion

today is simply that the Debtor has pled enough to warrant further proceedings on the issue.


### C.  The Nature of the FDCPA Violation Asserted by the Debtor

Ocwen's next line of defense is that the filing of a proof of claim in a bankruptcy case,

per se, cannot be the basis for imposing liability under the FDCPA.  Before analyzing the merits

of this argument, it is helpful to describe the nature of the FDCPA violation asserted by the

Debtor.

The Debtor asserts that the POC filed by Phelan Hallinan (with Ocwen's assistance) on

behalf of U.S. Bank failed to recognize the consequence of the merger doctrine on the

prepetition judgment in foreclosure that U.S. Bank obtained against the Debtor and, as a result,

demanded payment of charges that were legally uncollectible.  In Bernadin I, I concluded that

this argument was well pled with respect to post-judgment escrow advances included in the

POC.  See Bernadin I, 2019 WL 5556505, at *9 (citing In re Culler, 584 B.R. 516, 523–24

(Bankr. E.D. Pa. 2018) (collecting cases)).

The Debtor asserts that in demanding payment of these uncollectible charges in the POC,

Ocwen misrepresented the character, amount, or legal status of the debt, see 15 U.S.C.

§1692e(2), and used "unfair or unconscionable means to collect or attempt to collect" the debt by

attempting to collect an amount not "expressly authorized by the agreement creating the debt or

permitted by law," see 15 U.S.C. §1692f(1).

13

At its core, the Debtor's argument is that by filing (or participating in the filing of) a

proof of claim that ignored the existence of the foreclosure judgment and the merger doctrine,

Ocwen falsely characterized the legal status of the debt and demanded payment of certain

charges incurred post-judgment (lender advances for taxes and insurance) that were not

authorized by law.  See 15 U.S.C. §§1692e(2), 1692f(1).

If the payment demands made in the POC had been made by a letter communication or in

a civil court complaint[16] outside the bankruptcy proof of claim context, and if the charges

demanded were not authorized by law,  precedent suggests that the Debtor would have a viable

FDCPA claim.[17]

---

[16]    It is settled that documents filed in judicial debt collection proceedings are communications
subject to the FDCPA.  See, e.g., Kaymark v. Bank of Am., N.A., 783 F.3d 168, 176 (3d Cir. 2015),
abrogated on other gr'ds by Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029 (2019); Machles v.
McCabe, Weisberg & Conway, P.C., 2017 WL 5172516, at *4 (E.D. Pa. Nov. 7, 2017) (citing Kaymark);
Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C., 114 F. Supp. 3d 1342, 1365 (N.D. Ga.
2015).

[17]    See Stratton v. Portfolio Recovery Assoc., LLC, 770 F.3d 443, 451 (6th Cir. 2014) (false
statement that debt buyer had the right to collect interest on the consumer's debt was a "false
representation" of the "character" and "amount" of the debt); Dimatteo v. Sweeney, Gallo, Reich & Bolz,
L.L.P., 619 F. App'x  7 (2d Cir. July 16, 2015) (nonprecedential) (demand for attorney fees in judicial
eviction proceeding violated FDCPA where no written agreement between landlord and tenant existed
and no authority under state law provided for award of attorney's fees); U.S. v. Commercial Recovery
Sys., Inc., 179 F.Supp.3d 728, 735–36 (E.D. Tex. 2016); Agostino v. Quest Diagnostics, Inc., 2011 WL
5410667 (D.N.J. Nov. 3, 2011) (debt collector violated FDCPA by demanding payment of service
charges without a basis in contract); see generally Guevara v. Midland Funding NCC-2 Corp., 2008 WL
4865550 (N.D. Ill. June 20, 2008) (a consumer may state a claim for violations of the FDCPA based on
misrepresentation and unfair collection practices which are contained in a state court complaint); Reyes v.
Kenosian & Miele, L.L.P., 619 F. Supp. 2d 796 (N.D. Cal. 2008) (same).

        However, it is worth noting that the FDCPA does not provide relief under 15 U.S.C. §§1692e(2),
1692f(1) simply because it is ultimately determined that a debt collector is not entitled to 100% of the
amount demanded in its communication.  There is a limiting principle: an FDCPA violation arises only if
there is no legal basis (contractual or otherwise) for the payment demand.  See, e.g., Wehrheim v. Secrest,
2002 WL 31242783 (S.D. Ind. Aug. 16, 2002) (it is not deceptive under the FDCPA to specify an

(continued...)

14

The Debtor contends that the if the FDCPA is violated by a communication in a letter or in a civil court filing, so too the statute is violated by the same conduct when a proof of claim is filed in a bankruptcy case.

### D.  The Filing of a Proof of Claim in a Bankruptcy Case
### May Give Rise to a Claim for Violation of the FDCPA

### 1.

Ocwen argues that, as a matter of law, the filing of a proof of claim in a bankruptcy case, cannot be the basis for imposing liability under the FDCPA.

Respectfully, I reject this legal argument.

As explained below, I conclude that, based on the facts and circumstances presented here, the Debtor may invoke the FDCPA and has stated a claim against Ocwen under the statute.

### 2.

In support of its argument that filing a proof of claim in a bankruptcy case cannot give rise to a claim under the FDCPA, Ocwen cites three (3) cases from within the Third Circuit: a nonprecedential Third Circuit opinion, <u>Rhodes v. Diamond</u>, 433 F. App'x 78, 2011 WL 1591495

---

[17](...continued)
excessive claim in a state court complaint, provided that there is a reasonable basis in law for the claim).

15

(3d Cir. April 28, 2011), an opinion from the District of New Jersey, Giles v. Phelan, Hallinan & Schmieg, L.L.P., 901 F. Supp. 2d 509 (D.N.J. 2012), and a bankruptcy court opinion from the Western District of Pennsylvania, In re Abramson, 313 B.R. 195 (Bankr. W.D. Pa. 2004). [18]

Significantly, however, Ocwen fails to cite the Third Circuit's precedential opinion, Simon v. FIA Card Servs., N.A., 732 F.3d 259, 273–74 (3d Cir. 2013). Simon unequivocally holds that

> [w]hen . . . FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, **there is no categorical preclusion of the FDCPA claims** . . . **The proper inquiry . . . is whether the FDCPA claim raises a direct conflict between the Code or Rules and the FDCPA, or whether both can be enforced**.

Id. at 274 (emphasis added).

As this passage suggests, when two (2) different laws address overlapping subject matter, courts first attempt to interpret those laws so that there is no conflict. See, e.g., J.E.M. AG Supply, Inc. v. Pioneer Hi–Bred Int'l, Inc., 534 U.S. 124, 143 (2001); Simon, 732 F.3d at 274. If compliance with both statutes is possible, a party must comply with both. But, if an irreconcilable conflict arises between the two laws, one law will implicitly repeal the other. E.g., Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 664 (2007).

Implicit repeal is a narrow, disfavored doctrine in part because it is not always clear which law controls. See id.; Pontarelli v. U.S. Dept. of the Treasury, 285 F.3d 216, 232 (3d Cir.

---

[18]    This argument is made both in Ocwen's Motion and in Ocwen's Response to the Reconsideration Motion. The Debtor maintains that the POC augments the judgment with charges that are legally uncollectible.

2002). Typically, the more specific law overrides the more general one, but only for scenarios

falling within the scope of the specific law.  See Morton v. Mancari, 417 U.S. 535, 550-51

(1974).

Because bankruptcy is a distinct legal system, with its own procedures and rules, the

Bankruptcy Code will usually be the "more specific" provision and override an irreconcilable

conflict with the FDCPA.

In Simon, the Third Circuit held that the plaintiff stated a claim under the FDCPA,

§§1692e(5) and (13)[19]  based on alleged violations of the subpoena requirements relating to

examinations under Fed. R. Bankr. P. 2004.  Specifically, the plaintiff asserted that the defendant

violated Fed. R. Civ. P. 45(b)(1) by failing to serve the subpoenas directly on the individuals

subpoenaed and Rule 45(a)(1)(A)(iv) by failing to include the text of Civil Rule 45(c)-(d).

Simon, 732 F.3d at 264, 278–79.

The court reasoned:

---

[19]        15 U.S.C. §1692e provides, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means
> in connection with the collection of any debt. Without limiting the general application of
> the foregoing, the following conduct is a violation of this section:
>
> > (5)    The threat to take any action that cannot legally be taken or that is not
> > intended to be taken.
>
> > • • •
>
> > (13)   The false representation or implication that documents are legal process.

No conflict exists between these Bankruptcy Code or Rule obligations and the
obligations the Simons seek to impose under the FDCPA. A creditor may comply
with the obligations of Bankruptcy Rule 9016 and Civil Rule 45 on the one hand
and with the FDCPA on the other. Nor is there a conflict between the remedies
for noncompliance available in a bankruptcy court and the remedies available
under the FDCPA. The fact that the bankruptcy court has other means to enforce
compliance with the subpoena rules does not conflict with finding liability or
awarding damages under the FDCPA for violations based on a debt collector's
failure to comply with the subpoena rules.

732 F.3d at 279.

In short, Simon instructs that if a creditor can comply with both the Bankruptcy Code and

Rules and the FDCPA, the creditor must do so.  A bankruptcy debtor may assert a claim for a

violation of the FDCPA arising from conduct related to the bankruptcy case.  Further, the

damage remedy under the FDCPA may supplement or complement any existing remedies

provided by the Bankruptcy Code or Rules.[20]

**3.**

As discussed, Simon establishes the framework for analyzing a proceeding involving the

intersection of the FDCPA and the Bankruptcy Code.  However, because the dispute here arises

---

[20]     Fed. R. Bankr. P. 3001(c)(2)(C) imposes certain additional disclosure requirements (some of
which will be discussed further in Part III.D.4., infra) for a proof of claim based on a claim secured by the
debtor's principal residence.  The Rule further provides that if the claimant fails to provide the
information required by subdivision (c) of the Rule, the court may preclude the claimant from presenting
the omitted information in a contested matter or adversary proceeding and may award the opposing party
other appropriate relief, including reasonable attorney's fees and expenses.  Fed. R. Bankr. P.
3001(c)(2)(D).

    Rule 3001(c)(2)(D) and the FDCPA are complementary.  The Rule provides a remedy for failure
to provide information required by the Rule.  The FDCPA provides a remedy when the information
required by the Rule is provided but is false, deceptive, misleading, unfair or unconscionable.

18

in connection with the bankruptcy claims process,  the Supreme Court's decision in <u>Midland</u>

<u>Funding, LLC v. Johnson</u>, 137 S. Ct. 1407 (2017), relied on by Ocwen, also must be considered.

    In <u>Midland Funding</u>, the Court held that filing a proof of claim in a chapter 13

bankruptcy case that is obviously time barred is not a false, deceptive, misleading, unfair, or

unconscionable debt collection practice within the meaning of the FDCPA.

    The Court's primary rationale for its ruling was the broad definition of "claim" under the

Bankruptcy Code, which includes a "disputed" claim.  But the Court also discussed: (1) certain

differences between ordinary civil litigation and the bankruptcy claims process (including the

existence of a bankruptcy trustee who may raise an affirmative defense to a proof of claim based

on the expiration of the statute of limitations); and (2) more generally, differences between the

purposes and structural features of the Bankruptcy Code and the FDCPA.

    Certain portions of <u>Midland Funding</u> might be read to suggest that the Court engaged in a

<u>Simon</u>-like analysis and found an irreconcilable conflict between the FDCPA and the

Bankruptcy Code in connection with the bankruptcy claims allowance process.  For example, the

Court stated:

> The Act and the Code have different purposes and structural features. The Act
> seeks to help consumers, not necessarily by closing what Johnson and the United
> States characterize as a loophole in the Bankruptcy Code, but by preventing
> consumer bankruptcies in the first place. <u>See, e.g.</u>, 15 U.S.C. § 1692(a)
> (recognizing the "abundant evidence of the use of abusive, deceptive, and unfair
> debt collection practices [which] contribute to the number of personal
> bankruptcies"); <u>see also</u> § 1692(b) ("Existing laws and procedures ... are
> inadequate to protect consumers"); § 1692(e) (statute seeks to "eliminate abusive
> debt collection practices"). The Bankruptcy Code, by way of contrast, creates and
> maintains what we have called the "delicate balance of a debtor's protections and

obligations." <u>Kokoszka v. Belford</u>, 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d
374 (1974).

To find the Fair Debt Collection Practices Act applicable here would upset
that "delicate balance." From a substantive perspective it would authorize a new
significant bankruptcy-related remedy in the absence of language in the Code
providing for it. Administratively, it would permit postbankruptcy litigation in an
ordinary civil court concerning a creditor's state of mind—a matter often hard to
determine. <u>See</u> 15 U.S.C. § 1692k(c) (safe harbor for any debt collector who
"shows by a preponderance of evidence that the violation was not intentional and
resulted from a bona fide error notwithstanding the maintenance of procedures
reasonably adapted to avoid any such error"). Procedurally, it would require
creditors (who assert a claim) to investigate the merits of an affirmative defense
(typically the debtor's job to assert and prove) lest the creditor later be found to
have known the claim was untimely.

137 S. Ct. at 1414–15.

Ocwen proposes a broad reading of <u>Midland Funding</u>, as holding generally that "the
filing of a proof of claim . . . is not an unconscionable debt collection practice prohibited by the
FDCPA." (Ocwen Mem. at 15). At least one (1) post-<u>Midland Funding</u> bankruptcy court
agrees. <u>In re Derby</u>, 2019 WL 1423084, at *5 (Bankr. E.D. Va. Mar. 28, 2019). Other
bankruptcy courts, however, have continued to evaluate on their merits FDCPA claims arising
from creditor conduct occurring during a bankruptcy case. <u>See</u> <u>In re Thomas</u>, 578 B.R. 355
(Bankr. W.D. Va. 2017); <u>In re Thomas</u>, 592 B.R. 99, 104 (Bankr. W.D. Va. 2018), <u>aff'd sub</u>
<u>nom</u>. <u>Midland Funding LLC v. Thomas</u>, 606 B.R. 687 (W.D. Va. 2019); <u>see also</u> <u>Moore v.</u>
<u>Jefferson Capital Sys., LLC</u>, 2017 WL 2813536, at *2 (E.D. Mo. June 29, 2017).

I decline Ocwen's invitation to hold that a debt collector can never violate the FDCPA
when it files a proof of claim in a bankruptcy case. The language in <u>Midland Funding</u> that is

arguably supports Ocwen's position is dictum. And the Court's ruling on the specific issue it resolved does not compel such a result here.

In Midland Funding, the Supreme Court simply observed -- within the context of evaluating the legal consequences of filing a proof of claim that is subject to an obvious, affirmative defense -- that there are differences between ordinary civil litigation and bankruptcy proceedings that may mute some of the policy concerns that motivated Congress to enact the FDCPA. That observation supported the Court's fundamental holding that the Bankruptcy Code permits filing a "stale" proof of claim that is subject to an obvious statute of limitations defense. However, Midland Funding did not hold that there is an irreconcilable conflict between the Bankruptcy Code and the FDCPA or that the FDCPA categorically does not apply to the filing of a proof of claim in a chapter 13 bankruptcy case (as Ocwen suggests).[21]

---

[21]   I also respectfully suggest that, if presented with another FDCPA case involving the filing of a proof of claim, the Court may well acknowledge certain flaws in its reasoning in Midland Funding.

For example, while the Court correctly observed that chapter 13 bankruptcy cases have trustees who may object to a proof of claim, 137 S. Ct. at 1414, the Court inexplicably added: ("[t] he trustee normally bears the burden of investigating claims and pointing out that a claim is stale." The assumption that, in actual practice, chapter 13 trustees "normally bear the burden" of evaluating the allowability of claims in chapter 13 cases may lack empirical support. The reality of chapter 13 bankruptcy practice in many districts is that the chapter 13 trustee has no incentive to object to claims and leaves that task to the chapter 13 debtor (or his or her counsel) who may have the incentive to do so only in cases in which the allowance or disallowance of a claim may affect the debtor's ability to obtain confirmation of his or her proposed chapter 13 plan or may reduce the amount the debtor needs to pay into the plan.

Another flaw in the Court's analysis is its statement that "[a]nd, at least on occasion, the assertion of even a stale claim can benefit a debtor. Its filing and disallowance 'discharge[s]' the debt. 11 U.S.C. §1328(a)." 137 S. Ct. at 1414. The Court here suggests that the filing and disallowance of a stale claim is better for a debtor (for discharge purposes) than if the claim was not filed at all. Respectfully, this statement is legally inaccurate. The discharge of a debt pursuant to 11 U.S.C. §1328(a) does not depend upon the allowance or disallowance of a claim. If a debtor schedules an unsecured debt, gives notice to the claimant and provides for treatment of the claim (presumably, as part of the class of general unsecured creditors) -- a provision that exists in virtually every chapter 13 plan -- the debt is discharged, regardless whether the creditor files a proof of claim (assuming that it is not subject to an exception to discharge). In

(continued...)

In these circumstances – where the Supreme Court has not spoken definitively on the issue  -- it is appropriate for the bankruptcy court to follow Simon and engage in the conflict analysis required therein.  See generally United States v. Swida, 180 F. Supp. 2d 652, 659 (M.D. Pa. 2002), aff'd, 51 F. App'x 905 (3d Cir. October 24, 2002) ("If it merely appears that the reasoning of an otherwise controlling precedent has been 'weakened' by pronouncements in subsequent Supreme Court decisions, [a lower court] must still follow the directly applicable precedent, leaving to the Court of Appeals the prerogative of determining that the directly applicable precedent can no longer stand").

**4.**

Turning back to the analysis required by Simon, the question presented here is whether an FDCPA claim based on alleged unlawful payment demands made in proof of claim conflicts with the Bankruptcy Code due to the specialized characteristics of the bankruptcy claims allowance process.

The purpose of a proof of claim is to demand payment from the debtor's bankruptcy estate based on an existing debt.  In this respect, the claims process mirrors the demand for judgment made by a creditor-plaintiff in a civil action complaint.[22]  While there are procedural

---

[21](...continued)
these common circumstances, the claim is dischargeable regardless whether a claim is filed, allowed, or disallowed.

[22]     Technically, the proof of claim seeks payment from the bankruptcy estate, not the debtor. However, in a chapter 13 case, the debtor uses and controls all property of the bankruptcy estate, see 11 U.S.C. §1303, and makes payments into the bankruptcy plan that result in the payment (in whole or in part) of the creditors' allowed claims.  Thus, as a practical matter, the filing of a proof of claim is a request for payment of a debt from the debtor.

differences between civil actions and the bankruptcy claims allowance process with respect to

pleading standards and burdens of proof,[23] none of these differences impacts the fundamental

obligation of a debt collector to characterize accurately the legal status of the underlying debt

and to demand payment only for those charges that are grounded in the parties' agreement or

that otherwise are authorized by law.

At the same time, however, the claims allowance process is heavily "regulated" by the

Federal Rules of Bankruptcy Procedure.  Rule 3001(c) sets out the information that must be

included in a proof of claim.  With respect to a proof of claim in which the claimant asserts the

existence of a security interest in property that is the debtor's principal residence, Rule

3001(c)(2)(c) requires that the proof of claim include "the attachment prescribed by the

appropriate Official Form."  The "appropriate" Official Form is Official Form B410A, "Proof of

Claim Attachment A," also called the "Mortgage Proof of Claim Attachment."  Form B410A is

an attachment to Form B410, the general, official proof of claim form.

Form B410A includes three (3) sections relevant to the issue before this court.

In Part 2, titled "Total Debt Calculation," the creditor must add the principal balance,

interest due, fees and costs due, and any escrow deficiency for funds advanced, then subtract any

suspense funds on hand.

---

[23]     Numerous reported decisions point out that: (1) a proof of claim is allowed unless a party objects; (2) if a proof of claim complies with the requirements of Fed. R. Bankr. P. 3001, the claim is <u>prima facie</u> allowable (the proof of claim, in effect, serving as both a pleading and evidence); (3) if a proof of claim is <u>prima facie</u> valid, the burden of production shifts to the objector to produce evidence that refutes at least one (1) allegation that is essential to the claim's legal sufficiency; and (4) but, at all times, the ultimate burden of persuasion remains with the claimant.  <u>E.g.</u>, <u>In re Henry</u>, 546 B.R. 633, 634–35 (Bankr. E.D. Pa. 2016) (citing authorities); <u>In re Sacko</u>, 394 B.R. 90, 97–98 (Bankr. E.D. Pa. 2008) (same).

**Part 2: Total Debt Calculation**

Principal balance:  _____

Interest due:  _____

Fees, costs due:  _____

Escrow deficiency for
funds advanced:  _____

Less total funds on hand:  − _____

Total debt:  _____

The "total debt" calculated in Part 2 of Official Form 410A is the "total debt" number that is placed on the Proof of Claim, Official Form 410, Part 2, Paragraph 7 in answer to the question, "How much is the claim?"

In Part 3 of Form B410A, titled "Arrearage as of Date of the Petition," the creditor must calculate the prepetition arrears by adding principal and interest (past) due, prepetition fees and any existing escrow deficiency, plus a projected escrow shortage, minus funds on hand.  This calculation gives the "prepetition arrearage" which also is placed on the proof of claim, Form B410, in Part 2, Paragraph 9 as the "Amount necessary to cure any default as of the date of the petition."

**Part 3: Arrearage as of Date of the Petition**

Principal & interest due: _____

Prepetition fees due: _____

Escrow deficiency for funds
advanced: _____

Projected escrow shortage: _____

Less funds on hand: – _____

Total prepetition arrearage: _____

Finally, Part 5 of Form 410B provides a grid for setting forth a loan payment history from the first date of default.  The claimant must itemize every payment and charge made by a borrower or incurred by a lender.  The numbers in the payment history should match the numbers placed in Parts 2 and 3.

A creditor is obliged to complete Forms B410 and B410A "without alteration, except as otherwise provided in these rules, in a particular Official Form, or in the national instructions for a particular Official Form."  Fed. R. Bankr. P. 9009(a).

Parts 2 and 3 of Form B410A mandate these two (2) distinct methodologies for computing a claim (the "total debt" and the "total prepetition arrearage") because 11 U.S.C. §1322(b)(5) and §1325(a)(5) give a chapter 13 debtor the option of either proposing a plan to cure a prepetition default or paying off the debt in its entirety.[24]

---

[24] As discussed in <u>Bernadin I</u>, in some cases the debtor's options may be circumscribed by 11 U.S.C. §1322(b)(2).

Requiring the creditor to state both the "cure" and "payoff" amounts in Form B410A thus facilitates case administration.  Bearing in mind that a debtor may choose either manner of treating the debt (and might even switch the proposed treatment prior to confirmation), requiring the creditor to state both the "cure" and "payoff" amounts in its proof of claim provides the debtor, the chapter 13 trustee, and interested parties with all relevant information needed to make informed decisions.

In applying <u>Simon</u> to the circumstances presented, the key issue is whether a residential mortgage lender can provide the information required by Forms B410 and B410A (as mandated by Fed. R. Bankr. P. 3001(c)(2)(C)) without violating the FDCPA.  If so, there is no conflict between the bankruptcy system and the FDCPA and the Debtor's FDCPA claim may be viable.

5.

I conclude that a creditor can complete Official Forms B410 and B410A (as mandated by the Federal Rules of Bankruptcy Procedure) accurately and without violating the FDCPA.  In this respect, there is no conflict between the bankruptcy claims allowance process and the FDCPA.

In reaching this conclusion, I acknowledge that there is an ambiguous term in Form B410A.  I am referring to Part 2 of the Form that requires the creditor to itemize the principal balance and interest; fees and costs; escrow deficiency (minus unapplied funds) in order to calculate the "Total debt."

26

Admittedly, the term "principal balance" is commonly employed as the starting point in calculating the "payoff" amount of a mortgage debt that has not been reduced to judgment, after which the creditor may add the other components itemized in Part 2 in order to calculate the "total debt." Thus, the drafters of the Form did not tailor the terminology of the Form with precision to account for cases in which the traditional concept of the "principal balance" (and the additional charges accruing under the note and mortgage) have merged into a prepetition judgment.

Based on its use of the term "principal balance," Part 2 of Form 410B might be read superficially as requiring a creditor that holds a foreclosure judgment to calculate its total claim in its proof of claim (as U.S. Bank and its agents did in this case) as if no judgment had been entered – even in a jurisdiction in which the merger doctrine applies! But merely stating that proposition demonstrates the obvious: that cannot possibly be what Part 2 of the Form requires.

The purpose of a proof of claim and the accompanying attachment is to state accurately the amount and itemize the components of the total debt. No official bankruptcy form could be intended to require a creditor (or its debt collector agent) to itemize and request payment of charges that the creditor has no legal right to collect. It is inconceivable that an Official Form would require or permit a creditor to submit misinformation to the court.

Resolution of the issue boils down to this: it is possible for a debt collector of a residential mortgage creditor to complete Part 2 of Form 410A accurately when the creditor's mortgage has merged into a prepetition foreclosure judgment. This is accomplished simply by treating the foreclosure judgment amount as the "principal balance" amount to be filled in on the

27

Form and then adding to that amount those post-judgment charges that survive the merger of the mortgage into the judgment or that otherwise are authorized by law.

Completing the Part 2 of Form 410A in this manner does not require dramatic linguistic, legal or conceptual gymnastics; this approach is not a big "stretch."[25]  Functionally, the monetary amount of the judgment is the new "principal balance" of the debt: the judgment has capitalized all of the pre-foreclosure interest and charges that have been included in the judgment and post-judgment interest runs on this new principal balance, not the pre-judgment principal balance.  In addition, the creditor may add to the principal balance/judgment amount any other charges that survived the merger of the note and mortgage into the judgment or that otherwise may be assessed in order to calculate the total debt.

In short, the most natural and obvious way to complete Form 410A when the claimant's holds a prepetition judgment in mortgage foreclosure in Pennsylvania is to treat the judgment amount as the "principal balance" as that term is employed in Part 2 of the Form.  Reading and completing the Form in the alternative manner leads to an absurd and unacceptable result .  Consequently, Form 410A and the FDCPA dovetail each other.

For these reasons, I conclude that the Bankruptcy Code and Rules do not conflict with the FDCPA and the Debtor may pursue a claim based on Ocwen's participation in the filing of the POC in this bankruptcy case.

---

[25]    I acknowledge that I previously observed that the filing of a post-judgment mortgage proof of claim that ignored the entry of judgment was "understandable" because Form B410A might "require some creative action to complete properly if a judgment has been entered." Culler, 584 B.R. at 519 n.1. In retrospect, my choice of words overstated the problem.  The primary point of this passage in Culler was to point out that there is some ambiguity in the Form; it was not intended to suggest that Form creates an intractable dilemma for creditors.  And, to the extent that accurate completion of the Form requires any "creativity," the amount of creativity required is minimal because the solution is simple.

# IV.  CONCLUSION

For the reasons stated above, I conclude that the Reconsideration Motion should be granted.

To be clear, I have not determined that Ocwen is liable to the Debtor under the FDCPA. I have determined only that, in Count IV of the Complaint, the Debtor has pled sufficient facts to states a claim against Ocwen under the FDCPA and that there is no rigid, categorical bar against asserting an FDCPA violation based on conduct relating to the filing of a proof of claim in bankruptcy case.

Accordingly, I will enter an order: (1) vacating my prior order as it recommended that the district court dismiss Count IV of the Complaint and (2) denying Ocwen's Motion to Dismiss Count IV of the Complaint.


**Date: December 20, 2019**

                           **ERIC L. FRANK**
                           **U.S. BANKRUPTCY JUDGE**